## Bennett, Appellant, *v.* Zoning Board of Adjustment.

Argued May 4, 1959.  Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*Michael H. Egnal,* for appellant.

*Levy Anderson,* First Deputy City Solicitor, with him *Gordon Cavanaugh,* Assistant City Solicitor, *James L. Stern,* Deputy City Solicitor, and *David Berger,* City Solicitor, for Zoning Board of Adjustment, appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 28, 1959:

One passing by plane over the area along the Roosevelt Boulevard in North Philadelphia, where it intersects with Hartel Street, might gain the impression he was looking upon a reproduction of the historical scene of Conestoga Wagons poised for their dash into the newly-opened Oklahoma Territory.  A closer inspection would reveal, however, that the assumed pioneer wagons are in fact auto-trailers with protruding tongues ready to lick up the highway behind automobiles, to which they are babblingly attached for transportation of household goods, furniture and other rattling cargo.

These trailers are rented and sold by Roger J. Bennett who operates a gasoline service station at this point (7800 Roosevelt Boulevard). The trailers differ in size, weight and construction, ranging in weight from 500 to over 1,000 pounds, varying in length from 5 feet to 14 feet, and differing in type—being two and four-wheeled vehicles, open and roofed. The people living in the area, which is zoned partly "B" and "C" Residential, object to the presence of the serried ranks of trailers with their accompanying dollys. They complain that the traffic turmoil caused by the attachment of these vehicles to their mother cars, their maneuvering into position and taking to the highways, all create noises, smells, and a general hubbub which are inimical to the health, welfare, and safety of the community.

In an appropriate proceeding, following a duly constituted hearing, the Zoning Board of Adjustment of Philadelphia agreed with the protestants and ruled that Bennett's use of his land (a three-quarter acre plot) in the clamorous manner indicated constituted a violation of the Philadelphia Zoning Ordinance. Bennett appealed from this decision to the Court of Common Pleas No. 7 of Philadelphia County which affirmed the action of the zoning board, and he then appealed to this Court.

Mr. Bennett contends here, as he maintained before the zoning board and the court of common pleas, that the trailer business which he conducts is an activity inextricably part of his gasoline service business. But even his operation of a gasoline service station in the tranquil and attractive residential district on Roosevelt Boulevard is already a departure from what is ordinarily allowed in that area. It was only because the Court of Common Pleas No. 2 of Philadelphia County, (March Term, 1956), specially allowed him to

use his property for a gasoline service station that he can be in business there at all. Being, then, already in enjoyment of one exception to the zoning regulations he seeks a full accordion expansion of that exception to the point where he may engage in a business wholly apart from what is permitted him by the nonconforming use.

Bennett is authorized to conduct at 7800 Roosevelt Boulevard the business of a gasoline service station. A gasoline service station is intended for the convenience of motoring wayfarers whose gasoline and oil gauges inform them of the immediate need of fuel and lubrication. It is in the nature of a roadside restaurant for hungry cars, it is an oasis on the Sahara of a long journey. It is not a hotel, it is not a *general* repair shop, it is not a warehouse where one may obtain permanent accessories and Siamese attachable dump carts, wagons, vans and freight trailers.

It is argued by Mr. Bennett that many gasoline service stations sell tires, batteries, cigarettes, bottled soda, cleaning fluids and insecticides. On the foundation of this assumed permitted extension of the purpose of a gasoline station he builds his asserted right to deal in auto-trailers. To begin with, there is no established legalized right for a gasoline service station to sell the articles mentioned, although certainly it would be unreasonable for a community to object to occasional sales of soda to quench the thirst of a dusty motorist, cigarettes to satisfy a nicotine-famished traveler, and a tire to help the driver who encountered an aggressive nail on the road. But it is equally certain that if the service station proprietor sold cigarettes, tires, and refreshments in large and continuing quantities, a protest would be acceptable for adjudication in the courts.

It was testified in behalf of the appellant that some 118 gasoline service stations in Philadelphia rented trailers. Photographs introduced before the zoning board showed that at some of those stations one or more (not exceeding four) parked trailers were noted. But on April 8, 1959, as many as 89 trailers were parked on Bennett's premises and on April 14th the number had increased to 91. And then, even if a trailer or two encumbered the ground around 118 gasoline service stations, this number would represent but a small fraction of 5,000, the estimated number of gasoline stations in Philadelphia. Furthermore, no evidence was adduced to show what the trailers were doing at the 118 service stations. If they were being rented, the rentals could have fallen within the protection of permissible nonconforming uses, variances, or proper uses within zoning classification. And there was the possibility also that they were being rented in outright violation of law. This would not justify Bennett doing the same thing. The man who sells dynamite without authority cannot justify his violation of the law by arguing that a neighbor also sells the dangerous article without authority and without a record of recent travels.

But, even conceding, arguendo, some hypothetical merit to the appellant's argument that he should not be molested in his trailer activity since other gasoline service stations rent trailers, the record shows that the average income from trailer rentals at other service stations is about $22 per month, whereas Bennett's income from trailer business in 1958 amounted to $18,795.75! It is apparent from this impressive figure that the trailer business is not merely an incidental part of Bennett's gasoline business but has become an independent enterprise in itself, all in violation of zoning law.

The appellant has not attempted. to camouflage his flouting of the zoning restrictions. In the Philadelphia Telephone Directory (yellow classified section), he carries a quarter-page advertisement in which he proclaims that: "Our Business is Trailers." The advertisement is enlivened with the sketch of a man riding a trailer, clinging to a large box while about him are clustered lamps, brooms, and trunks. Then, there are other sketches of furniture vans and wheel boat trailers. The advertisement calls upon the reader to "Buy — Sell — Rent — Trailer Hitches — Couplings — Overload Springs — Dollys — Refrigerator Hand Trucks Auto Tow — Bars, Tarpaulins." One studies this stirring appeal in vain for the slightest suggestion that at 7800 Roosevelt Boulevard one may buy gasoline to keep his car rolling after he has hooked it up to a lumbering furniture van or a trailing, swaying motor boat.

The appellant argues that there is an "affinity" between selling gasoline and the rental-sale of auto-trailers. This may be true but there is also an affinity between the sale of gasoline and the sale of new and used cars. Still, no one would argue that a gasoline service station could clutter up its lot with dilapidated and worn-out cars and sell them to its customers who stop to get a tank full of gas. Affinity does not. mean synonymous. The sale of shoestrings is an affinity to the selling of shoes but no sidewalk peddler of shoestrings would be allowed on that basis to open up a shoe shop and dispense all types of footgear.

The appellant says that zoning regulations may not be applied to resist a natural operation of economic laws. But natural economic laws must still wear the harness of state and municipal regulation where health, safety, and morals are concerned. Otherwise a bicycle vendor could easily persuade himself that he has the right to take orders for Cadillacs.

It is not enough that the trailer business have an affinity to the gasoline selling business or that it be "subordinate to the main use." It must also be "customarily incidental" to the main use. (*Gold v. Zoning Board of Adjustment*, 393 Pa. 401) The lower court properly found, in affirming the decision of the zoning board of adjustment, that the rental and sale of trailers by the appellant at his gasoline service station, is not an incidental part of the business allowed under the nonconforming use established by the court.

Order affirmed; each party to bear own costs.