## Gross, Appellant, *v.* Zoning Board of Adjustment (et al., Appellant).

Argued December 2, 1966.  Before BELL, C.J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Levy Anderson,* First Deputy City Solicitor, with him *Edgar R. Einhorn,* Assistant City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia, defendant.

*Reuben E. Cohen,* with him *Abraham L. Shapiro, Harold Greenberg,* and *Cohen, Shapiro, Berger & Cohen,* for plaintiff.

OPINION BY MR. JUSTICE EAGEN, March 14, 1967:

These are cross appeals in a zoning case.

In 1959, the Zoning Board of Adjustment of the City of Philadelphia (Board) granted to Jerome Gross two variances: one to use a property owned jointly with his wife, zoned "R-10" Residential,[1] as a bowling alley; and, the other to increase the size of the building so as to cover one hundred per cent of the lot.[2]

In 1965, the Pennsylvania Liquor Control Board approved the transfer of a liquor license to the prem-

---

[1] This classification permits only residential uses.

[2] Since 1946, the Board had permitted the property to be used for commercial purposes including a freight distribution terminal, and as a plant for the fabrication of windows and doors.

ises, subject to the construction of appropriate facilities. Gross then partitioned off a part of the building interior from the bowling alley area, and installed therein facilities necessary for the operation of a restaurant, snack bar and luncheonette. This restaurant area measures twelve feet by fifty-one feet.

Shortly thereafter, Gross applied to the Board for a permit to operate a restaurant, snack bar and luncheonette on the premises, including the sale of alcoholic beverages for the convenience of his bowling customers. The permit was denied. On appeal, the Court of Common Pleas of Philadelphia County concluded that the proposed restaurant facility constituted an "accessory use" to the bowling alley, as that term is defined in the Philadelphia Zoning Code,[3] and that the Board erred as a matter of law in denying the permit for this facility. However, the court further ruled that the sale of alcoholic beverages is not such an accessory use to a bowling alley and affirmed the Board's action in denying the permit to use the premises for this purpose. Upon petition of both Gross and the City, we granted certiorari under Rule 68½ and both filed timely appeals. Since no additional testimony was taken in the court below, our review is limited to the determination of whether or not the Board committed an error of law or was guilty of a manifest abuse of discretion: *Brennen v. Zoning Board of Adjustment,* 409 Pa. 376, 187 A. 2d 180 (1963).

### Appeal of City (No. 365)

The Philadelphia Code defines an accessory use as one subordinate to the main use and customarily inci-

---

[3] The pertinent section of the code defines accessory use as follows: "A use, including all necessary public utility facilities, subordinate to the main use on the lot and customarily incidental to the main use, excluding signs."

dental thereto. See footnote 3, supra. The City contends that a restaurant facility is not "customarily incidental"[4] to the operation of a bowling alley. However, the uncontradicted testimony in the record is to the contrary. It establishes that a very substantial percentage of bowling alleys in the Philadelphia area have restaurant facilities of the nature and extent involved herein.

The record also discloses that the proposed restaurant facility will not be a new or independent enterprise, but merely ancillary to the main business; that it will entail no expansion of the present building; that it will occupy only 3.5% of the business premises; and, that the income will constitute only a small fraction of the gross business income. Under these facts, we agree with the lower court that the proposed restaurant facility is an accessory use under the particular code.

But says the City, even if the restaurant facility meets the requirements of an "accessory use" under the code, it still should not be permitted because the bowling alley itself exists only by way of variance, and an accessory use may not be tacked on to uses permitted by variances.

We have found no case directly in point and textbook authority offered no answer to the problem.[5]

---

[4] In the context of this zoning code, the meaning of "accessory use" hinges upon what is "customarily incidental." Black defines "incidental" as: "Depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose." Black's Law Dictionary (4th ed. 1951). "Incident" is explicated by Bouvier thusly: "This term is used both substantively and adjectively of a thing which, either *usually* or naturally and inseparably depends upon, appertains to, or follows another that is more worthy . . . ." (Emphasis added.) 2 Bouvier's Law Dictionary (8th ed. Rawle 1914).

[5] See Lieberman and Rabin, Law of Zoning in Pennsylvania (1958); 8-8A McQuillin, Municipal Corporations (3d ed. 1949; re-

*Bennett v. Zoning Board of Adjustment,* 396 Pa. 57, 151 A. 2d 439 (1959), relied upon by the City is inapposite. Therein Bennett was seeking to introduce as the major use of his property an entirely new business enterprise.

We have consistently held that a lawful nonconforming use (i.e., one in existence before the effective date of the zoning ordinance) may validly be expanded by a reasonable accessory use which is not detrimental to the public health, welfare and safety. See *Brennen v. Zoning Board of Adjustment,* supra; *Eitnier v. Kreitz Corp.,* 404 Pa. 406, 410-11, 172 A. 2d 320 (1961); *Peirce Appeal,* 384 Pa. 100, 105, 119 A. 2d 506 (1956); *Firth v. Scherzberg,* 366 Pa. 443, 449, 77 A. 2d 443 (1951); *Humphreys v. Stuart Realty Co.,* 364 Pa. 616, 621, 73 A. 2d 407 (1950); *Cheswick Borough v. Bechman,* 352 Pa. 79, 82, 42 A. 2d 60 (1945); *Gilfillan's Permit,* 291 Pa. 358, 362, 140 A. 136 (1927) (dictum). See also Note, *The Expansion Doctrine in Pennsylvania,* 22 U. Pitt. L. Rev. 747 (1961). Pennsylvania's ruling in this respect is premised upon the view that the owner of property to which a lawful nonconforming use has attached enjoys a vested property right thereto which may not be abrogated, unless it is a nuisance, or abandoned, or is extinguished by eminent domain (See *Eitnier v. Kreitz Corp.,* supra, and *Penn Township v. Yecko Bros.,* 420 Pa. 386, 217 A. 2d 171 (1966)), and that a zoning ordinance cannot preclude a natural and reasonable expansion thereof. It appears to us that a use permitted by variance or special dispensation is comparable and establishes in the property owner a vested right similar to that in the lawful nonconforming use situation. If this be

vised 1965); Metzenbaum, The Law of Zoning (1st ed. 1930); Metzenbaum, The Law of Zoning (2d ed. 1955); Rathkopf, The Law of Zoning (3d ed. 1959).

so, then logic and fairness compel the conclusion that the granted use may be added to by a normal and reasonable use flowing therefrom. The contrary would be similar to giving one a cake but denying him reasonable frosting therefor.

### Appeal of Gross (No. 387)

The main thrust of this appeal is, that the denial of the permit to sell alcoholic beverages on the premises is in effect an attempt by the municipality to invade the exclusive domain of the Pennsylvania Liquor Control Board, and control the dispensing of alcoholic beverages under the guise of zoning regulations, contrary to our ruling in *Sawdey Liquor License Case,* 369 Pa. 19, 85 A. 2d 28 (1951). With this we do not agree.

Aside from the fact that *Sawdey* is factually dissimilar, we are not here confronted with an ordinance banning the dispensing of liquor generally, but merely the interpretation and enforcement of a pre-existing zoning code by the body invested with that responsibility. It is perfectly legitimate for a municipality to reasonably regulate the multiplication of nonaccessory uses arising out of an initial nonresidential use or business in a residential neighborhood. The fact that a liquor license is available for the premises does not relieve Gross of complying with existing zoning regulations. See *Veltri Zoning Case,* 355 Pa. 135, 49 A. 2d 369 (1946).

Order affirmed.