## Picket Corp. v. Keil

*Daniel L. Quinlan, Jr.,* for plaintiff.

*James E. Meneses,* for defendant.

SCIRICA, J., March 31, 1971.—The Picket Post is located in Gulph Mills, Upper Merion Township, in a residentially zoned area and has operated as a restaurant by reason of a variance granted in 1962 to the original owner. The variance was issued subject to several specific restrictions concerning parking, landscaping, sewage and character of the operation as an inn-restaurant with no dining facilities on the second floor.

In 1965, the property and restaurant business was sold to the present owner who is the petitioner

here. On May 8, 1969, the building was destroyed by a fire. When petitioner sought to restore the building in June or July of 1969, as it existed prior to the fire, he was refused a building permit. The building official told him that petitioner had to file an application for a variance because the prior owner had made unauthorized alterations to the building. The rear enclosed porch had been extended beyond its dimensions in 1962, when the variance allowing the use was granted. Since petitioner was directed to file an application for a variance, he decided to apply for permission to enlarge the aforementioned enclosed porch and to install two fire exits.

On December 9, 1969, the zoning board held a hearing on petitioner's appeal, and on December 30, 1969, rendered its decision that petitioner really did not need a variance in order to restore the building, reciting the law to be that a variance runs with the land, and a use, once permitted, is not lost when the building housing it is destroyed by a fire.

At the same hearing, petitioner's application for a variance to allow a modification and extension of the rear enclosed porch was considered. This extension was sought for purposes of beautification and, to allow for the construction of two additional fire exits. Seating was to be made more comfortable, but the capacity was not to be enlarged. This variance was denied because petitioner could not prove an unnecessary hardship which is prerequisite to the granting of a variance.

The zoning hearing board did grant a variance to allow a modification of the porch as it was extended prior to 1965. This was indicated by a marking on

a plan and a notation thereon where the two fire exits were to be constructed, and in its decision. This variance was granted in the interests of the health, safety and welfare of the community, and from it, no appeal was taken.

Petitioner commenced reconstruction but departed from the plans in changing the location of the fire doors, and in making some minor alterations in the walls and thereby in the dimensions of the building.

Also, when the building was almost completed, he began to enclose a part of the roof over the kitchen. On June 17, 1970, he was directed to halt construction of this enclosure, and again, on June 26, 1970, he was told he had to file for a variance. On July 6, 1970, petitioner petitioned for another variance, but since the workmen were on the job, and it was necessary to complete the kitchen, petitioner completed the enclosure.

The reason petitioner built the enclosure was the need to house new kitchen equipment which was not identical to that destroyed and which for several reasons could not be placed exactly where the old equipment had been located. Petitioner installed an Ansul System (a fire protection system), a hot water system and a kitchen supplemental air supply. Petitioner testified that the new systems could not be installed in the kitchen where the former inadequate systems had been located, and that he was advised to install them on the roof over the kitchen and to enclose them so that the installation would be water-tight. The enclosure also gave petitioner some storage space. This storage space was not a net gain as the new electrical system was installed in the original storage room on the second floor. The testimony disclosed that it was not essential that the

electrical system be placed in the room, but that this was the most desirable place from the point of view of the Philadelphia Electric Company.

On September 15, 1970, a hearing was held on the application for a variance to enclose portion of the roof, and at a later date, additional evidence was submitted by petitioner. On January 13, 1971, the zoning hearing board rendered its decision not to grant the variance for the enclosure for reason that petitioner failed to establish an unnecessary hardship. The zoning hearing board did not believe petitioner's testimony, and concluded that the equipment was relocated for considerations other than necessity. An appeal was taken, No. 71-00695, and for reasons noted below, is before the court now.

The reconstruction of the building had been completed for some time. Petitioner applied for a use and occupancy permit, but this was refused. He then brought an action in mandamus to compel the issuance of a use and occupancy permit. An answer was filed, and hearing held thereon.

On February 11, 1971, the court heard testimony from several witnesses. It was apparent that the interests of justice demanded a prompt decision on all matters concerned with this property and business. Since the court had already heard the evidence that would have been adduced in support of the above appeal (no. 71-00695), as well as that evidence concerned with the mandamus action, at the suggestion of the court, the parties entered a stipulation that both matters be decided by the hearing judge forthwith.

All the work has been completed and is admittedly of the highest quality. The building officials testified to the high standard of workmanship and total compliance with the building code; that the sole

reason for not issuing the use and occupancy permit was that the fire exits were not located where the zoning hearing board, in its decision of December 30, 1969, indicated they should be constructed, and that petitioner had made other minor modifications, which changed the structure architecturally, but did not increase the seating capacity. The building official further testified that his decision not to issue the permit had nothing to do with the fact that the roof did not conform. He stated that, even if the building were reconstructed so that the fire exits were where the zoning hearing board wanted them, then he would refuse to issue the permit for the reason that the roof failed to conform with the plans. It was at this point in the hearing when the parties agreed, at the suggestion of the court, to consolidate all matters concerning this property and business.

It is conceded that petitioner did not locate the fire exits where the zoning hearing board wanted them, and that a few other minor architectural modifications were made. Petitioner was careful in subtracting areas whenever he added in another place. His action in proceeding without necessary permits does not merit commendation, and while this court cannot condone, it understands. It was apparent to petitioner that any time he would apply for a building permit to make a modification, he would be told that he required a variance. At this rate, the reconstruction of the Picket Post would have taken longer than reconstruction of the South. The problem is clarified by looking at the result imposed by the zoning hearing board after the hearing on December 9, 1969. The zoning hearing board told petitioner where to locate the fire exits without reference to any problems posed by the interior or how it would serve

its purpose as a restaurant. Petitioner testified that he did not question the action of the zoning hearing board because he just wanted to commence reconstruction and feared further delay. Upon commencement, it was discovered that these locations were not reasonable vis-a-vis the traffic flow within the restaurant. There was no doubt to petitioner then, and to the court now, that the only way the township would have let petitioner proceed to change the locations of these exits to more practical places was to appeal for a variance which would have been turned down for want of an unnecessary hardship. Any single change would have taken many months, if indeed, it was ever permitted.

A summary of the township zoning code is helpful to the understanding and resolution of the issue involved. A building permit is required prior to any construction or alteration of an existing structure. All plans, documents and other information necessary to enable the building official to ascertain compliance with all pertinent ordinances must be furnished. Once the building official certifies that the proposed construction or alteration complies with all applicable ordinances, he must issue a building permit. When the work is being done and after it is finished, the building official inspects the work, and if he certifies that it has been accomplished in conformity with all applicable ordinances, then use and occupancy is permitted upon proper application. The building official must issue a use and occupancy permit if the application and work comply with all applicable ordinances.

The use and occupancy permit was denied here for the reason that petitioner failed to comply with the plans in relocating the fire exits and in making some minor modifications.

As the court reads the township zoning code, the issuance of a building permit is not discretionary. The permit issues as of right once the building official certifies that the proposal complies with all applicable ordinances. The building official has no discretion not to issue the permit except for noncompliance with any of the applicable ordinances. The issuance of the permit is ministerial once compliance is certified. Thus, had plaintiff applied for the building permit (for the enclosed roof) rather than proceeding without it as he did, the permit would necessarily have been issued, as even defendant concedes that all work done fully complies with all applicable ordinances. At no time was any unwillingness to comply evident. After completion of the work, which fully complied, the use and occupancy permit would also have issued as of right.

The court is of the opinion that the concept of a "variance" has been confused and misapplied by the township officials.

"A variance is an authorization for the construction or maintenance of a building or structure, or for the establishment or maintenance of a use of land, which is prohibited by a zoning ordinance": 2 *American Law of Zoning* § 14.02 (1968).

Plaintiff's restaurant was established by grace of a variance.

"When a variance . . . is granted the use permitted thereby becomes a conforming use . . .": Rathkopf, The Law of Zoning, p. 46-1 (3d ed., 1966).

We do not think that an additional variance must be obtained whenever an alteration is made to the building housing the now conforming use. The proposition that a variance must be sought whenever a minor architectural modification is made to a structure housing a use made legal by a variance

is absurd from the point of view of the great amounts of time which would be wasted and of logic. In Gross v. Zoning Board of Adjustment, 424 Pa. 603 (1967), the court states that when a use is permitted by a variance, it may be added to by a normal and reasonable use flowing therefrom. There, plaintiff built a bowling alley under a variance. He then built within it a restaurant to service his patrons. The court held that the restaurant was an accessory use and that it was permissible, rejecting the argument that the accessory use should not be allowed because the primary use existed only by the grace of a variance, and that an accessory use may not be tacked on to uses permitted by variances.

By analogy, if an accessory use is permitted, then an architectural alteration of the building housing the primary use does not require a second variance, so long as it complies with all applicable ordinances and the conditions and/or restrictions set forth in issuing the variance.

The aforementioned confusion of the zoning hearing board is apparent in its decisions of December 30, 1969, by which it is noted that there was no unnecessary hardship, but nevertheless, granted a modified variance in the interest of the health, safety and welfare of the community as to the extension of the porch prior to 1965, and permitted fire exits to be installed. The difficulty arises in that this is not a case for a variance.

It is our conclusion that plaintiff was incorrectly advised to apply for variances and that the modifications he desired should have been subject only to the applicable building codes, ordinances and conditions and/or restrictions in the variance of 1962, and if they complied, a building permit should have been issued.

Therefore, in the matter of the appeal from the decision of the zoning hearing board, no. 71-00695, petitioner must succeed, since a variance was not necessary in the first place in order to make the modification of the roof, and therefore, the building permit should have been issued if compliance with all pertinent ordinances was certified. The township has conceded that all work complies fully with the pertinent ordinances, so for the purpose of this appeal, we will act as if the work was accomplished under the proper permit. The court directs the building official to issue said permit and further directs petitioner to pay the usual charges therefor.

We will now pass to petitioner's prayer for mandamus to compel the issuance of a use and occupancy permit.

A stringent test must be met in order to be eligible to benefit from a mandamus decree.

"It is well settled that: 'Mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there is *clear* legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy . . .' ": Martin v. Garnet Valley School District, 441 Pa. 502, 505-06 (1971).

Mandamus to force the issuance of permits was approved in Commercial Properties, Inc. v. Peternel, 418 Pa. 304 (1965), where township officials took many actions to prevent petitioners from building a shopping center and where the sole basis for their action was to frustrate the petitioners. The court stated, at page 309, that mandamus lies not only when there is a clear legal right to the performance of a ministerial act, but also to compel the exercise of official discretion and to prevent the arbitrary or fraudulent exercise thereof.

This action has also been approved in 8A McQuillen Mun. Corps., §25.307 (3rd ed):

"Mandamus to compel a certain action by a board or official relative to a zoning matter may be proper under some circumstances. Thus, mandamus may be an available remedy to compel the issuance of a building or other permit wrongfully refused by a zoning official or board . . ."

In denying mandamus, the court, in Francis v. Corleto, 418 Pa. 417 (1965), said at page 429:

". . . mandamus is essentially equitable in nature, requiring the application of equitable principles. It is reserved only for those situations where necessary to promote the ends of justice and where the prayer of the petitioner appeals to the conscience of the court."

The equitable nature of mandamus was also affirmed in Dombrowski v. Philadelphia, 431 Pa. 199 (1968).

The court finds that this case presents a situation where it is necessary to promote the ends of justice. A great deal of misunderstanding existed. Although minor architectural changes were made, the use was not altered, nor were any ordinances or codes violated. The health, safety and welfare of the community has not been jeopardized. In fact, the Gulph Mills Civic Association recommended to the zoning board of appeals that the alterations be approved.

The test outlined in Martin v. Garnet, supra, is met. Where the work is done in compliance with all applicable ordinances, there arises a right in the applicant to a use and occupancy permit. Upon proper application and certification of compliance with all applicable ordinances, the building official must issue a use and occupancy permit. Therefore, there are both a clear legal right in petitioner, and

a corresponding duty in defendant. There is no other adequate remedy. The prayer of the petitioner appeals to the conscience of the court.

ORDER

And now, March 31, 1971, after a hearing, the following is ordered and decreed:

1. The building official of Upper Merion Township is directed to issue a building permit to petitioner for the enclosure of the roof over the kitchen upon payment of the usual fees.

2. The building official of Upper Merion Township is directed to issue the required building permits to petitioner for the fire doors and minor architectural modifications made upon payment of the usual fees.

3. The building official of Upper Merion Township is directed to issue a use and occupancy permit to petitioner upon payment of the usual fees.

All of the above permits are to be issued forthwith in accordance with this order.