IMS America, Ltd., Appellant *v.* Zoning Hearing Board of the Borough of Ambler and Herman Iacovetti, Appellees.

Argued December 10, 1985, before Judges ROGERS and MACPHAIL, and Senior Judge BARBIERI, sitting as a panel of three.

*Marc B. Kaplin*, with him, *Stephen Raslavich, Lesser & Kaplin, P.C.*, for appellant.

*George Q. Hardwick*, for intervenor, Herman Iacovetti.

OPINION BY JUDGE ROGERS, January 30, 1986:

IMS America, Ltd. (appellant) has appealed from an order of the Court of Common Pleas of Montgomery County affirming the decision of the Zoning Hearing Board of the Borough of Ambler (Board) that the application of landowner Herman Iacovetti to extend a lawful nonconforming use of land should be granted.

Mr. Iacovetti owns a lot of land containing 24,308 square feet, improved with a small automobile service and repair building and two gasoline pump islands. It is located at an intersection in the Borough of Ambler. Mr. Iacovetti commenced operation of the existing gasoline and auto repair station in 1971 which he then rented from others. He purchased the property in 1976. The property was at first zoned commercial and Mr. Iacovetti's operations were permitted uses until 1977 when borough council enacted a new

zoning ordinance which placed the property in the TC Transportation Center District in which the use of land for a gasoline and auto repair station was not a permitted use.

In August 1983, Mr. Iacovetti filed with the Board an appeal from the action of the borough zoning officer refusing his application for permission to build and operate a car wash facility as an extension of his nonconforming use of the property. The use of land for a car wash is also not permitted in the TC district.

At the Board's hearing Mr. Iacovetti testified that he used two-thirds of his lot for his gasoline and auto repair station and its appurtenances and that cars have been parked on the balance of the lot. The existing building is 55 by 28 feet or 1,540 square feet in area; the proposed car wash building would be a separate building measuring 80 by 25 feet or 2,000 square feet; that is, about one-third larger than the existing building. A plan in evidence shows that the entrance to the car wash would be by passing through the pump islands; the exit would be to a public road by means of a proposed new curb cut. A witness knowledgeable in the car wash industry testified that the car wash could cost as much as $150,000.

The Board reluctantly concluded that Mr. Iacovetti was entitled to a permit to have the car wash by Section 2605 of the Ambler Borough zoning ordinance and also upon what it believed were holdings of the Pennsylvania Supreme Court that a car wash is a use accessory to a gasoline and auto repair station and therefore is ineluctably and unconditionally qualified to be approved as an extension to an existing lawful nonconforming gasoline and auto repair station. The common pleas court, which received no evidence, agreed with the Board. IMS America, Ltd., a neighbor who was a party at all stages below, has appealed.

We have concluded that the Board, whose decision is the subject of our review, has overlooked pertinent case authority and as a consequence committed errors of law in approving on this record Mr. Iacovetti's proposed car wash as an extension of his gasoline and auto repair station.

Section 2605 of the ordinance, upon which Mr. Iacovetti and the Board heavily rely, is as follows:

> *Extension.* . . . any building of which a lawful nonconforming use is made may be extended upon the lot occupied by such building . . ., provided that the area of such building shall not be increased by more than a total of twenty-five (25%) percent of the area of such building existing on the date it first became a lawful nonconforming building. . . .

The Board construed this provision as a limitation only upon the extensions by additions to existing buildings; and concluded that Section 2605 should be taken as meaning that extensions of nonconforming uses by the erection of new buildings were subject to no limitation at all. This remarkable interpretation is just contrary to the interpretation given a materially identical provision of the Philadelphia zoning ordinance in *Humphreys v. Stuart Realty Corp.*, 364 Pa. 616, 73 A.2d 407 (1950). The provision of the ordinance in *Humphreys* is described by the author of the opinion, Mr. Chief Justice STERN, as "provid-[ing] that a non-conforming use in a building might be extended provided that no addition or structural alteration for such nonconforming use should exceed 25% of the area of the building at the time of the enactment of the ordinance." *Id.* at 616, 73 A.2d at 408. Mr. Chief Justice STERN, after observing that the cases hold that a nonconforming use may be increased in extent by natural extension and growth of trade, wrote that by reason of the limitation in that

case "such permissible enlargement of the use does not warrant the erection of new buildings or structures or any additions to buildings beyond the 25 percent allowance hereinbefore referred to." *Id.* at 621, 73 A.2d at 409.

The *Humphreys* holding is supported in principle by *Philadelphia Art Alliance v. Philadelphia Zoning Board of Adjustment,* 377 Pa. 144, 104 A.2d 492 (1954), where the question was whether a zoning regulation limiting the extension of nonconforming buildings and uses therein to the extent of 25% of the area of such buildings and uses should apply to allow the extension of nonconforming uses not carried on in buildings, that is, of a parking lot. The Supreme Court agreed with the trial court that the silence of the ordinance on the subject of nonconforming uses of vacant land was not to be construed as a denial of the extension in such a case and that "[t]here is no reason to believe that the framers of the Ordinance intentionally sought to arbitrarily discriminate against users of vacant land by prohibiting them from extending a nonconforming use, and authorizing a 25% extension in area for nonconforming uses in 'buildings'." *Id.* at 148, 104 A.2d at 494. Similarly, here there is no reason to believe that the framers of the Ambler Borough ordinance intended that its limitation should be construed, as the Board has, to arbitrarily discriminate against persons who wish to extend their existing building by limiting them to 25% of its size while permitting owners who wish to construct detached buildings to do so without limitation.

Hence, Section 2605 of the Ambler Borough zoning ordinance, interpreted as the *Humphreys* case teaches it should be, provides that no extension of a nonconforming use whether by enlargement of an existing building or by the erection of detached structures may

exceed the 25% allowance. The Board's allowance of the 130% extension was error.[1]

As we have earlier noticed, the Board based its decision to allow the extension of use in this case not only on its conclusion that Section 2605 of the ordinance had no application, but also upon case law. It made a syllogism consisting of: a major premise that "a lawful nonconforming use . . . may validly be expanded by a reasonable accessory use," language found in *Gross v. Zoning Board of Adjustment*, 424 Pa. 603, 607, 227 A.2d 824, 826 (1967); a minor premise that "the washing of cars is a use 'customarily accessory and incidental to' the operation of 'a . . . garage or repair shop . . . and . . . a use . . . of the same general character as that ordinarily conducted in those establishments'," language found in *Novello v. Zoning Board of Adjustment*, 384 Pa. 294, 297, 121 A.2d 91, 92 (1956); and the conclusion that Mr. Iacovetti's car wash must, again ineluctably and unconditionally, be allowed.[2] The Board thereby erred in a number of respects.

First, whether a use proposed as the extension of a nonconforming use is the same as the existing use or is a use accessory to the existing use, it must be shown to be "needed to provide for . . . natural expansion

---

[1] The Board wrote that it "realizes that the non-applicability of that section [2605] to the instant situation creates an anomaly, and it appears clear that this 'loophole' in the ordinance perhaps allows that which might have not been intended by the authors of the ordinance."

[2] The Board wrote: "The new car wash facility, as to both its cost and its size, substantially exceeds . . . [those of] the existing nonconforming building. . . . It has been well argued [by the objector] that this use is not an accessory use . . . . [A]s our courts have consistently held that a car wash is an accessory to a gasoline station, the Board believes it has no other choice than to determine that this applicant is entitled to the intended addition. . . ."

and the accommodation of increased trade." *Gilfillan's Permit*, 291 Pa. 358, 140 A. 136 (1927). In *Gross,* the authority cited for the major premise of the Board's syllogism, the application was for the installation of a snack bar in a bowling alley. Justice (later Chief Justice) EAGEN who wrote the opinion for the Supreme Court took pains to observe that the snack bar would not require expansion of the existing building, that it would occupy only a small part of the premises and that the income of the snack bar would constitute a small fraction of the gross business income, all factors tending to show that the expansion proposed was reasonable. Indeed, the *Gross* court recognized the general rule by its citation of *Gilfillan's Permit* and by stating the rule to be that "a zoning ordinance cannot preclude a natural and reasonable expansion." 424 Pa. at 607, 227 A.2d at 827 (1967). In short, *Gross* does not hold that regardless of the circumstances, an accessory use must be allowed as an extension of a nonconforming use.

Second, *Novello,* cited by the Board in support of its minor premise that car washes are invariably accessory to gasoline service stations, was not a nonconforming use case. The point at issue there was that of whether a car wash was a permitted use of a vacant lot in a zoning district in which uses customarily accessory to or of the same general character as other specifically described uses were permitted uses. One of the specifically described uses was the operation of a gasoline service station. The Supreme Court held that the use of the lot as a car wash was permitted because it was a use customarily accessory to a gasoline service station operation and of the same general character. There were no questions in *Novello* of the extent of the proposed car wash use or of whether the use was needed to provide for the natural or reasonable expansion and the accommodation of in-

creased trade. Hence, *Novello* does not stand for the proposition that a car wash is accessory to a gasoline service station for the purposes of the extension of the existing nonconforming use of a gasoline service station by the erection of a car wash.

Third, because Mr. Iacovetti's case was built upon the syllogism, there is nothing in the record which would support a conclusion that the car wash was needed to provide for natural expansion or accommodation of increased trade at the service station. For aught that appears, this service station could be incidental to the car wash as the Board expressly noted.

The orders of the Court of Common Pleas and of the Zoning Hearing Board are reversed; and the order of the Borough Zoning Officer, refusing the petitioner's application, is reinstated.

ORDER

AND Now, this 30th day of January, 1986, the orders of the Court of Common Pleas of Montgomery County and the Zoning Hearing Board of Ambler Borough are reversed; and the order of the Borough Zoning Officer, refusing the petitioner's application, is reinstated.

AMENDED ORDER

AND Now, this 31st day of March, 1986, it appearing that in our order of January 30, 1986, we inadvertently used the phrase ''the petitioner's'' instead of ''Mr. Iacovetti's,'' we do hereby amend said order so as to effect the change just mentioned so that the said order shall be and read as follows:

AND Now, this 30th day of January, 1986, the orders of the Court of Common Pleas of Montgomery County and the Zoning Hearing Board of Ambler Borough are reversed; and the order of the Borough Zoning Officer, refusing Mr. Iacovetti's application, is reinstated.