## HARRISBURG GARDENS, INC., Appellant

### v.

## SUSQUEHANNA TOWNSHIP ZONING HEARING BOARD.

Commonwealth Court of Pennsylvania.

Argued March 31, 2009.

Decided Sept. 23, 2009.

---

Leslie D. Jacobson, Harrisburg, for appellant.

Kathryn Simpson, Harrisburg, for appellees.

BEFORE: LEADBETTER, President Judge, PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Appellant Harrisburg Gardens, Inc. (Harrisburg Gardens) appeals from an order of the Court of Common Pleas of Dauphin County (Trial Court) that overruled Harrisburg Gardens' appeal of, and affirmed, a Decision of the Susquehanna Township Zoning Hearing Board (Board). The Board's Decision, *inter alia*, concluded that Harrisburg Gardens' present use and operation of its property and business was not a valid nonconforming use, and further was not a natural expansion of a pre- existing valid nonconforming use enjoyed by Harrisburg Gardens' predecessor. We affirm.

Harrisburg Gardens is the owner of approximately 7 acres of real property (hereinafter, the Property) on which it operates a nursery and garden center, selling plants, landscape boulders, pavers, stone, mulch, topsoil and related products. Harrisburg Gardens is also involved in landscaping, excavating, shrub and grass care and services, and the installation of patios, retaining walls, and ponds. The Property is located in a residential neighborhood containing approximately thirty-one residences, of which at least ten abut the Property.

Harrisburg Gardens purchased the Property in 2000 from a party named Montgomery, who in turn had previously purchased the Property from Walter–Nissley–Walter (WNW). During the period of Montgomery and WNW operations, the business was primarily a nursery, earning its profits from the sales and service of plants, trees and shrubs, with a small percentage of sales generated by the sale of stone and mulch. During those periods, the business maintained two or three storage bins for mulch, topsoil, and/or stone or related products. The business, at that time, maintained no inventory of large landscape boulders.

Since its purchase of the Property, Harrisburg Gardens' business operations have evolved toward the selling of more retaining wall and landscape materials, although it does still grow and sell plants and related products, some of which are brought in from off site. However, the business currently derives more than half of its sales volume from stone and related products, as opposed to plant-related products. During the current ownership of the business, Harrisburg Gardens has expanded spatially on its lot without the erection of

new buildings, and now employs more workers. Harrisburg Gardens' current operation involves the use of large trucks for the purpose of handling its on-site inventory of large landscaping boulders. The current business uses more and larger trucks, and causes significantly more noise and dust, in comparison to its predecessor. Until recently, Harrisburg Gardens had also been manufacturing topsoil and crushing rock on the Property, which was then trucked off site. The Property's number of mulch/topsoil/stone storage bins had also increased significantly.

At an unspecified time prior to the proceedings at issue, Susquehanna Township Zoning Officer Michael Rohrer responded to complaints filed by Harrisburg Gardens' neighbors concerning its current uses of the Property. Rohrer performed a site inspection of the business, and then forwarded a letter to neighbors Tim and Pam Alvey (the Alveys) indicating that Harrisburg Gardens was operating a legal, nonconforming entity that was not in violation of any ordinance.

Thereafter, however, on August 9, 2006, Rohrer forwarded a letter to Harrisburg Gardens' owner indicating that a subsequent site inspection confirmed that the business had expanded its prior nursery business to include the manufacturing of topsoil and stone. Rohrer further stated, therein, that the prior nonconforming use had not included such manufacturing activities and that manufacturing was not listed as a permitted use under the Susquehanna Township Zoning Ordinance (Ordinance) [1] for the R–2 Zoning District in which the business was located. Rohrer also noted that any nonconforming use extension must be approved by the Board via special exception. Rohrer further notified Harris-

burg Gardens that certain large landscaping boulders were being stored in violation of the visibility requirements in Section 2108.2 of the Ordinance, and requested that the boulders be relocated.

On September 6, 2006, Rohrer again wrote to the Alveys, stating that Harrisburg Gardens had removed the large boulders as requested, that Harrisburg Gardens had removed a soil/rock processing machine, and that the business was no longer manufacturing products on the Property. Rohrer concluded that Harrisburg Gardens was therefore no longer in violation of the Ordinance.

On October 9, 2006, the Alveys filed a Notice of Appeal with the Board, claiming, in relevant part, that Harrisburg Gardens was still in violation of the Ordinance in relation to its continuing nonconforming uses, and that its activities represented an unhealthy, harmful trespass upon the properties of the neighbors of the business. The Alveys requested that the Board either reassess Harrisburg Gardens' uses of the Property, or formally require the business to submit an application for an extension of nonconforming use. The Board thereafter held hearings on November 1, 2006, and January 17, 2007.

By Decision filed on March 2, 2007, the Board sustained the Alveys' appeal, concluding that Harrisburg Gardens' present use and operation was neither a valid nonconforming use, nor a valid continuation of any prior nonconforming use of its predecessor. The Board noted, in its Decision, the doctrine of natural expansion, under which our Courts have held that the owner of a nonconforming use may expand that use in the pursuit of expanding its busi-

---

1. Portions of the Ordinance can found in the Reproduced Record (R.R.) to this matter at 420a–435a.

ness.[2] However, the Board concluded that the evidence presented in this case demonstrated that Harrisburg Gardens' current operation was not a mere expansion or enlargement of a similar business activity, but something new and dissimilar to the existing nonconforming use. The Board particularly noted that Harrisburg Gardens' current operation included a change in the intensity and concentration in certain business activities, including significant increases in noise, dust, dirt, vibration, and large truck traffic, as well as the use of a greater number of trucks, employees, and large material storage bins. Accordingly, the Board sustained the Alveys' appeal, expressly concluding that Harrisburg Gardens' present use and operation of its business was not a valid nonconforming use, and was not a valid continuation of the nonconforming use enjoyed by Harrisburg Gardens' predecessors.

On March 30, 2007, Harrisburg Gardens filed in the Trial Court a Land Use Appeal from the Board's Decision, and additionally filed a Motion for the Presentation of Additional Evidence (the Motion). By order dated April 4, 2007, the Trial Court remanded the matter to the Board for consideration of Harrisburg Gardens' Motion. Thereafter the Board held a hearing on June 6, 2007, to receive the requested additional evidence. At the Board hearing, Harrisburg Gardens' requested a continuance due to the unavailability of its witnesses, which continuance was denied. The Board, however, did receive additional testimony from three witnesses that had previously testified before the Board in the matter. On July 18, 2007, the Board sent to the Trial Court the additional evidence received, without issuing a new decision in the matter.

On November 30, 2007, Harrisburg Gardens filed a Motion to Strike the Testimony, Exhibits and Record Created by the Board (hereinafter, Motion to Strike), seeking to exclude the testimony presented to the Board in its second hearing by those witnesses that had previously testified in the matter. Harrisburg Gardens, therein, noted that testimony from witnesses who had previously testified should have only been allowed as rebuttal, and not direct, testimony. By order dated December 21, 2007, the Trial Court denied Harrisburg Gardens' Motion to Strike.

The Trial Court thereafter considered Harrisburg Gardens' Land Use Appeal based upon the parties' briefs.[3] By order dated March 17, 2008, the Trial Court adopted the Board's findings of fact, and ruled that the Board did not abuse its discretion or commit an error of law in regards to its March 2, 2007 Decision. Citing to the Board's findings, the Trial Court further concluded that Harrisburg Gardens' current operation was a new and dissimilar business entity from that of its predecessors. As such, the Trial Court overruled Harrisburg Gardens' appeal, and affirmed the Board's Decision.

Harrisburg Gardens now appeals from the Trial Court's March 17, 2008 order to this Court. By order dated April 15, 2008, the Trial Court ordered Harrisburg Gardens to file a statement of the errors complained of and intended to be argued on appeal, pursuant to Pa.R.A.P.1925. Har-

---

**2.** *See generally, Silver v. Zoning Board of Adjustment*, 435 Pa. 99, 255 A.2d 506 (1969) (With certain limitations, the owner of a prior nonconforming use is entitled to expand its business in scope and volume provided that the expansion is natural, and is done for the accommodation of increased trade).

**3.** The Board and William and Carol Peters (the Peters), as Interveners, filed a joint brief before the Trial Court, and have filed a joint brief to this Court in the matter *sub judice.*

risburg Gardens complied therewith on April 30, 2008, and subsequently the Trial Court issued a Memorandum Opinion in support of its March 17, 2008 order (hereinafter, the Trial Court Opinion).

■ Where the trial court receives no additional evidence on appeal from a zoning hearing board's decision, an appellate court's standard of review is to determine whether the board committed an abuse of discretion or an error of law. *Narberth JKST Tennis Club, Inc. v. Zoning Hearing Board of Borough of Narberth*, 938 A.2d 1144 (Pa.Cmwlth.2007).

■ Pennsylvania's Supreme Court has established that to qualify as a continuation of an existing nonconforming use, a proposed use must be sufficiently similar to the nonconforming use to a sufficient degree so as to not constitute a new or different use. *Limley v. Zoning Hearing Board of Port Vue Borough*, 533 Pa. 340, 625 A.2d 54 (1993). While a proposed use need not be identical to the existing use, a similarity between the uses is necessary. *Id.*

■ Further, citing to *Limley*, this Court has stated:

In determining whether a proposed use bears adequate similarity to an existing nonconforming use, courts must give effect to the doctrine of natural expansion, which permits a landowner to develop or expand a nonconforming business as a matter of right ... The doctrine of natural expansion supports increased intensity in a property's utilization, e.g., an increase in the number of users or an increase in the frequency of a use.

*Lench v. Zoning Board of Adjustment of City of Pittsburgh*, 852 A.2d 442, 444 (Pa. Cmwlth.2004). A court cannot employ an overly technical assessment of a nonconforming use to stunt its natural development and growth. *Id.* However, we have

also recognized that it is the policy of the law to closely restrict nonconforming uses. *B & B Shoe Products Co. v. Zoning Hearing Board of Manheim Borough*, 28 Pa. Cmwlth. 475, 368 A.2d 1332 (1977).

■ Harrisburg Gardens first argues that the Trial Court erred in affirming the Board's Decision, in that Harrisburg Gardens' current operation is an expansion or enlargement of the legal nonconforming use existing on the Property. Harrisburg Gardens cites primarily to *Silver*, and to *Pappas v. Zoning Board of Adjustment of City of Philadelphia*, 527 Pa. 149, 589 A.2d 675 (1991).

In *Silver*, our Supreme Court held that within certain limitations, the owner of a prior nonconforming use is entitled to expand its business in scope and volume provided that the expansion is natural, and is done for the accommodation of increased trade. The appellant therein owned a nonconforming apartment building, initially comprised of 33 units, which became a valid and legal non-conforming use when Philadelphia's first comprehensive zoning code was subsequently adopted. Silver sought to increase the number of units within the building by subdividing the existing units without changing the external dimensions of the pre-existing building. The Supreme Court held that the contemplated expansion must not be detrimental to public health, welfare and safety, and ultimately permitted the natural expansion of Silver's prior nonconforming use.

In *Pappas*, the Supreme Court again visited the natural expansion doctrine. Therein, the owner of a take-out sandwich shop, which constituted a nonconforming use, sought to expand to a full service pizza shop. However, the owner took three years to ultimately complete the renovations for the expansion, during which time no business was conducted on the site. While the dispositional crux of *Pap-*

*pas* was whether or not the prior nonconforming use had been abandoned, the Supreme Court also held that the expansion at issue could not be characterized as a change to a new and different use, but was an expansion of the prior nonconforming use, and that this Court's reliance on the overly technical distinction between a takeout and full service eatery ignored the doctrine of natural expansion in relation to the nonconforming use at issue.

Applying *Silver* and *Pappas* to the instant facts, Harrisburg Gardens argues that the Board specifically found that the business was conducting the same or similar activities on the Property as the prior owners, but is merely doing more volume that those prior owners. We disagree with that narrow, selective reading of the Board's Decision, which reads, in extended relevant part:

> After reviewing the testimony in this case, the Board believes the most salient aspect instantly is the change in the intensity and concentration of particular activities, with the lesser salient aspect being the change in or addition of certain activities.[ ] Our Findings of Fact indicate that the operation under WNW was a simple nursery in which sales consisted of at least 90 plants, flowers and trees. With [Harrisburg] Gardens, the mix has become over 50 in stone. Along with this change in the mix of product came a large, concomitant increase in noise, dust, dirt, vibration and large truck traffic, and a greater number of trucks and employees and activity in general. While the WNW operation had trucks and employees, and a very few storage bins, [Harrisburg] Gardens' operation involves larger and more trucks, more employees, and the dust, and noise that invariably accompanies greater business activities in general. For these reasons, we believe [Harrisburg] Gardens' operation is not a mere expansion or enlargement of a similar business activity, but something new and dissimilar from the WNW non-conforming use previously obtaining. [sic]

R.R. at 151a (footnote omitted). When read as a whole, the above-cited passage, directly relied upon by Harrisburg Gardens on this issue, cannot in any way be read to specifically conclude that Harrisburg Gardens is *solely* or even *primarily* conducting the same or similar activities on the Property as argued. Notwithstanding Harrisburg Garden's mischaracterization of the Board's specificity, the actual language of the Board's opinion concludes the precise opposite of Harrisburg Garden's argument on this point.

■ Additionally, and independently dispositive, the similarity of the prior and newly expanded uses is not determinative, notwithstanding Harrisburg Gardens' reliance upon testimony in the record that the current activity is not unrelated to the primary business. We have held that whether a use proposed as an extension or expansion of an existing nonconforming use is the same as the existing use, or is a use accessory to the existing use, the proposed use must be shown to be "**needed** to provide for . . . natural expansion and the accommodation of increased trade." *IMS America, Ltd. v. Zoning Hearing Board of Borough of Ambler*, 94 Pa.Cmwlth. 501, 503 A.2d 1061, 1064 (1986) (additional citation omitted; emphasis added). While Harrisburg Gardens' reliance on the similarity of the activities at issue can be seen to have some support within the record, there is no authority for such mere similarity, on its own, as a sufficient basis for the application of the natural expansion doctrine. "Expansions of nonconforming uses are also protected to the extent that they are **necessary** to provide for the natural expansion and accommodation of increased trade." *Collis v. Zoning Hearing*

*Board of East Allen Township,* 51 Pa. Cmwlth. 368, 415 A.2d 102, 104–105 (1980) (emphasis added). The record in the instant matter is bereft of any evidence found credible by the Board as to the *necessity* of the activity at issue as an element of the purported expansion of the original nonconforming use in this matter. Additionally, Harrisburg Gardens fails to cite to any such evidence within the record. As such, this argument is without merit.

Next, Harrisburg Gardens argues that the Board's finding[4] that Harrisburg Gardens' sales are more than 50 attributable to the sale of stone is without evidentiary support, and is in error. Harrisburg Gardens characterizes its owner's testimony as establishing that its sales consist of 50 plant materials, and 50 non-plant materials; however, the record flatly contradicts this characterization. Upon cross examination, and then when questioned by the Board's Chairman, Brent Miles, the owner of Harrisburg Gardens, testified:

> *Atty. Restak* (on cross-examination): What percentage of your operation would you say is plant material as opposed to rock, landscape material, topsoil? Can you quantify that?
>
> *Mr. Miles:* It would be a guess. Maybe 50/50.
>
> * * *
>
> *Chairman:* Did you say that about fifty percent of your business is selling trees, shrubs, flowers, whatever, and fifty percent stone?
>
> *Mr. Miles:* If you did an overview of my property, there's probably fifty percent where there's plant material. There's a field that runs down the whole side that

has mature trees that we sell occasionally too. So if you take that into consideration with the plant materials up front, you'd be looking at probably 50/50. If you're only looking at the plant material up front and then all the stone, then obviously the stone takes up more space.

> *Chairman:* **Well, not so much space as dollars. Is fifty percent of your business landscaping materials or—**
>
> *Mr. Miles:* **I'm sure I sell more stone. There's more money produced from the retail sales of stones than there is of the retail sales of plants.**

R.R. at 117a, 121a–121b (emphasis added). Harrisburg Gardens concedes that Mr. Miles' testimony is the sole evidence of record establishing the proportions of the business's sales volume. As such, the unambiguous testimony of Harrisburg Gardens' owner contradicts, and defeats, the business's argument on this point.

Harrisburg Gardens next argues that no evidence of record supports the Board's Finding 6, which states:

> During the period of the WNW and Montgomery operation, the business can best be described as a simple nursery, selling flowers, plants and trees, along with a small percentage of stone and mulch, and with at least 90 of sales of WNW being trees, shrubs and plants.

R.R. at 150a. Harrisburg Gardens asserts that there is no evidence of record as to the details of WNW's sales percentage of plant and non-plant materials, and that thusly the Board's finding is error, and the Board's conclusion that Harrisburg Gardens' operation is a new and different use from that of WNW is also error. Again,

---

4. The Board found:
   12. [Harrisburg] Gardens now does more than half its business (in sales volume) in stone, as contrasted with plants.

R.R. at 161a.

the record belies Harrisburg Gardens' argument.

■ Carol Peters testified that she has lived on adjacent property since 1971, and also worked for Harrisburg Gardens for one summer several years ago. R.R. at 54a, 57a–58a. Peters testified that from its inception until its purchase by Harrisburg Gardens, the Property was operated as a traditional retail nursery that sold shrubs, plants, trees, flowers, and some mulch, and that 90 of the Property's use was dedicated to growing trees, shrubs and plants. R.R. at 128a–129a. Additionally, Jacquelyn Patton testified that she has lived in the area of the Property since 1954, and was both familiar with, and a customer of, the prior business operations on the Property. R.R. at 245a–247a. Patton corroborated Peters' characterization of the Property. *Id.* As such, Harrisburg Gardens' argument on this issue is without merit.[5]

■ Finally on this issue, Harrisburg Gardens argues that no evidence of any detriment to the health, welfare, and safety of the public has been presented. We

disagree, based on the clear and repeated testimony in this matter of several witnesses of the significant increases in noise, dust, dirt, vibration, and large truck traffic, as well as the extension of this increased activity into later hours of the day and night. *See* R.R. at 17a, 26a–43a, 52a–54a, 58a–61a, 65a–68a, 101a, and 136a–137a. It is also well established that, once the objectors to Harrisburg Gardens' activities in this matter produced testimony as to the deleterious effects thereof upon their health, welfare, and/or safety, Harrisburg Gardens was then tasked with the burden to prove that its proposed expansion would not cause increased detrimental effects on surrounding properties. *B & B Shoe.* Harrisburg Gardens had failed to cite to any evidence within the record to satisfy that burden, and our examination of the record reveals no such evidence.

■ In its second issue, Harrisburg Gardens presents two arguments that the Trial Court erred in denying its Motion to Strike. Harrisburg Gardens first cites to Section 1005–A of the Municipalities Planning Code (hereinafter, the MPC).[6] Har-

---

5. We note that while Peters testified as to her characterization of "90% of the Property's *use*" as dedicated to growing trees, shrubs, and plants, the Board attributed that 90% figure to the prior business's *sales.* R.R. at 128a–129a, 150a (emphasis added). However, we find that semantic difference to be harmless error on the Board's part. The testimony cited above, as well as the record as a whole herein, does establish a basis for the Board's conclusion that the current operation constitutes a new and dissimilar use from the prior non-conforming use.

We also emphasize, tangentially and independently dispositive from our foregoing analysis, that Harrisburg Gardens produced no credible evidence or testimony whatsoever in regards to the specific nature of the use prior to its assumption of ownership of the Property, in relation to either the use or sales breakdown thereof. Further, Harrisburg Gardens produced no evidence or testimony to prove the existence of a prior valid nonconforming

use. . Neither the Board, nor any party herein, addressed that foundational matter of fact. However, we have held that a property owner seeking to expand its nonconforming use bears the burden to prove the existence of a prior nonconforming use by showing an actual use that was created in good faith and that previously existed lawfully. *McGeehan v. Zoning Hearing Board of Springfield Township*, 45 Pa.Cmwlth. 403, 407 A.2d 56 (1979). Where the issue is a potential allowance for a permissible expansion of a non-conforming use, the determination of that issue must be based upon an evidentiary record clearly defining the present extent of that use, *as well as its historical background. Upper Merion Township v. Urbano*, 6 Pa.Cmwlth. 297, 294 A.2d 403, 409 (1972) (emphasis added).

6. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. 11005–A, *added by* the Act of December 21, 2008, P.L. 1329. Section 1005–A states:

risburg Gardens argues that its Motion for the Presentation of Additional Evidence [7] under Section 1005–A of the MPC, which was filed concurrently with Harrisburg Gardens' appeal from the Board's March 2, 2007 Decision, was improperly remanded to the Board for consideration. Harrisburg Gardens argues that the Trial Court was without authority to remand consideration of the Motion to Present Additional Evidence to the Board, and should have decided that Motion itself prior to any potential remand. Thusly, Harrisburg Gardens concludes that the Board was without authority to decide the Motion to Present Additional Evidence, and the remand was reversible error.

Our review of the record reveals that nowhere within its Statement of Matters Complained of on Appeal was this argument raised by Harrisburg Gardens. R.R. at 395a–396a. Thusly, it is waived. As expressly noted by the Trial Court within its order of April 15, 2008, a failure to state an error complained of and intended to be argued on appeal will be considered as a waiver thereof. Pa.R.A.P.1925(b); *Solebury Township v. Solebury Township Zoning Hearing Board*, 914 A.2d 972 (Pa. Cmwlth.2007).

Next, Harrisburg Gardens argues that the Trial Court erred in denying Harrisburg Garden's Motion to Strike the testimony and concomitant record thereof in the wake of the Board's receipt of the additional testimony. Harrisburg Gardens argues that its Motion to Present Additional Evidence requested additional testimony only by Harrisburg Gardens' witnesses.[8] However, at the June 6, 2007 remand hearing, Harrisburg Gardens' witnesses were unavailable, and a requested continuance was denied. Notwithstanding the fact that Harrisburg Gardens submitted no additional testimony, the Board took additional testimony and admitted additional exhibits to the record from Carol Peters, Jacqueline Patton, and Athanasios Gaitanis. R.R. at 219a–285a. Harrisburg Gardens emphasizes that all three of those witnesses had previously testified regarding the same or similar topics to which they had testified in the prior proceedings before the Board, and that thusly that testimony, and the related exhibits, should have been stricken from the record.

Harrisburg Gardens has also waived this argument. The record shows that Harrisburg Gardens presented its request for a

---

Hearing and argument of land use appeal If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence, provided that appeals brought before the court pursuant to section 916.1 shall not be remanded for further hearings before any body, agency or officer of the municipality. If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. If the record does not include findings of fact or if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any.

7. *See* R.R. at 165a.

8. We note that Harrisburg Gardens grossly mischaracterizes its own Motion to Present Additional Evidence. Nothing therein states expressly, or implies, that only witnesses on Harrisburg Gardens' behalf were requested, or would be allowed to testify. R.R. at 165a, 189a.

continuance to the Board on the very evening of the meeting at which the additional testimony and evidence had been previously scheduled to be received. R.R. at 206a. When the Board denied the continuance, and indicated that additional witnesses would be heard later in that same meeting, Harrisburg Gardens' counsel left the proceedings without making any objection on the record. R.R. at 216a–217a. As such, any objection to the testimony and evidence received after that point has been waived. A party cannot gain advantage by making a hasty retreat from the hearing room. *See Seipstown Village, LLC v. Zoning Hearing Board of Weisenberg Township,* 882 A.2d 32 (Pa.Cmwlth.2005). As noted above, a party who fails to raise an issue before a municipal zoning hearing board is precluded from doing so for the first time on appeal. *Baker.*

Accordingly, we affirm.

### ORDER

AND NOW, this 23rd day of September, 2009, the order of the Court of Common Pleas of Dauphin County dated March 17, 2008, at No. 3162 CV 2007 LU, is affirmed.