550 A.2d 1045

John L. Thomas and Miriam Thomas *v.* Zoning Hearing Board of Benner Township and The Township of Benner. The Board of Supervisors of Benner Township, Appellant.

Argued November 3, 1988, before Judges BARRY, COLINS and MCGINLEY, sitting as a panel of three.

*Benjamin Novak, Novak, Stover & McCarty,* for appellant.

*Donald M. Kresen, Robert B. Mitinger & Associates,* for appellees.

OPINION BY JUDGE COLINS, December 1, 1988:

The Board of Supervisors of Benner Township (Board) appeals from an order of the Court of Common Pleas of Centre County which reversed the decision of the Zoning Hearing Board of Benner Township (ZHB) and ordered that Dr. John L. Thomas and Miriam Thomas (appellees) be permitted to erect a stable for the keeping of horses. We affirm.

Appellees are a veterinarian and his wife who recently built a home on a 5.08 acre lot contained in Walnut Grove Estates, a development located in a Low-Density Residential (LDR) district in Benner Township. Appellees applied to the zoning officer for a permit to construct a stable for the keeping of horses for their own personal recreational use.[1] This application was denied and an appeal was taken to the ZHB. Hearings were conducted and after due consideration of the evidence presented, the ZHB issued its decision denying the appeal. On further appeal, the trial court took no addition-

---

[1] There have been absolutely no allegations or evidence presented that would indicate that the appellees intend to use the stable for the keeping of and caring for horses in the course of Dr. Thomas' veterinary practice.

al evidence[2] and reversed the decision of the ZHB. The Board filed a timely appeal with this court.

The issue before the ZHB was whether a stable was an accessory building or the keeping of horses an accessory use to the permitted uses in a LDR district, pursuant to Section 503 of the Benner Township Zoning Ordinance (Ordinance).[3] Under Section 503 of the Ordinance, the following uses (as well as other uses not relevant here) are permitted as of right in LDR districts:

> 1. Single-family detached dwellings, single-family semi-detached dwellings, and two-family detached dwellings.
>
> . . .
>
> 3. Accessory buildings and uses customarily incidental to the above uses. . . .

Under Section 202 of the Ordinance, "accessory building or use" is defined as:

> *Accessory Building or Use:* A subordinate building or use or a portion of the main building on a lot, the use of which is customarily incidental to that of the main or principal building.

In order to establish the right to an accessory use, a landowner must prove that the use sought is secondary to the principal use and that it is customarily incidental to the principal use. *Franchi v. Zoning Hearing Board*

---

[2] Therefore, our scope of review is limited to determining whether the ZHB committed a manifest abuse of discretion or an error of law. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

[3] The ZHB states, in the discussion portion of its decision, that this question is one of fact. We find it to be a mixed question of fact and law. The determination of whether a use constitutes an accessory use under a particular ordinance is a question of law, but one which can be answered only by the consideration of the underlying factual situation.

*of the Borough of New Brighton,* 117 Pa. Commonwealth Ct. 236, 543 A.2d 239 (1988). The appellees' dwelling is clearly the predominant use of the subject lot. Therefore, the ZHB had to determine whether the construction of a stable and the keeping of horses were uses "customarily incidental" to a residence.

In doing so, the ZHB relied upon the case of *Von Gerbig v. Marshall,* 36 D. & C. 2d 133 (1964), which directed that "the true nature of the community" must be considered in interpreting what constitutes an accessory use. In *Von Gerbig,* a complaint was filed by a party seeking to enjoin the adjoining property owners from proceeding with the construction of a stable for the keeping of a horse. The trial court found:

> The general area in which these properties are located is rural and agricultural in character. Dwelling houses are spaced at some distances from each other and the intervening open spaces, some of which have been enclosed by fences as fields, are devoted to the raising of crops or the pasturing or grazing of livestock. There are no designated streets as distinguished from roads in the area; neither is the area serviced by any common water supply or sewage disposal system.

*Id.* at 139. The trial court went on to say:

> To say that the construction and use of a one-horse stable in an area in which this stable is to be located is not accessory to the dwelling use of a single house would require that we close our eyes to the true nature of the community itself. We venture that many houses similarly situated in the same locality keep horses for the convenience of the families who live in them.

*Id.* at 142.

In applying the test set forth in *Von Gerbig*, the ZHB began its analysis by stating: "[I]n this case we take 'true nature' to mean that which is actually done in a community. We take 'community' to mean Walnut Grove Estates." Herein lies the error of the ZHB. It erroneously limited its examination to the bounds of the development. The community to be considered must include the surrounding area.[4] The ZHB found that this development is bounded on the north and west by land owned by The Pennsylvania State University and used for airport and agricultural purposes. It further found that this development is bound on the east by a Rural Residential District which permits the keeping of horses as of right. The ZHB concluded that because no horses were kept on any lot within the development, that the true nature of the community *in Walnut Grove Estates* was such that a stable would not be an accessory building nor the keeping of horses an accessory use to a residence therein.

Our examination of the community, which includes Walnut Grove Estates and the surrounding area, leads us to a conclusion that the ZHB erred as a matter of law. It is significant to note that the ZHB's description of Walnut Grove Estates paints a picture of a typical residential development where homes are situated side by side in close proximity to one another. It emphasizes that the lots are an average size of 2.5 acres in size and the development is served by platted and dedicated streets. However, a thorough review of the record indicates that Walnut Grove Estates is not a typical residential development moving towards urbanization. The

---

[4] There is ample evidence in the record concerning the nature of the surrounding land. This evidence clearly establishes the rural nature of the community and the customary keeping of stables by landowners. Therefore, we decline to remand this matter for the taking of additional evidence.

development is located approximately five miles from downtown State College and eight miles from Bellefonte. The surrounding land as well as that contained in the subdivision is rural in nature.

In his testimony, Edward Miller, one of the original developers of Walnut Grove Estates, characterized the community as being rural as opposed to residential. He indicated that persons owning land adjacent to the subdivision kept livestock, including horses, in stables and barns on their property. He further indicated that contained in the deeds to the lots within the development were covenants permitting the keeping of animals such as horses or cattle.[5]

The testimony of other witnesses, residents within the development, revealed that some of the residents had in the past, raised animals on their property and had intended to do so in the future as well. In addition, there was evidence presented that one of the landowners within the subdivision had constructed what was labeled as a "modified barn" and another resident maintained structures for the keeping of goats and other animals. Virtually all of the evidence presented indicated that the "true nature of the community" was such that it would allow for the keeping of horses as an accessory use as of right under Section 503 of the Ordinance.

Contrary to the assertion of the appellants, we find the facts of this matter more akin to those in the *Von Gerbig* case than those in the case of *Borough of Palo Alto v. Haslam*, 74 Schuylkill Co. L.J. 72 (1978). In *Palo Alto*, the neighborhood was located in an R-2, Single

---

[5] The ZHB found the appellees' deed contained a restriction allowing all uses permitted in the Ordinance for a Rural Residential District with certain exceptions. One of these exceptions allowed the raising of horses on lots of 3.5 acres or more. However, the ZHB correctly concluded that the uses permitted or disallowed by zoning are not affected by deed restrictions.

Family Residential District. The area in question was served by a public sewage system and was characterized by the trial court as being a built-up residential district. The land in and surrounding Walnut Grove Estates is definitely rural in nature. It is quite distinct from the neighborhood considered in *Palo Alto*.[6]

We conclude that the ZHB erred as a matter of law in concluding that the maintenance of a stable and the keeping of horses are not customarily incidental to the use of a residence in this community. It is of no moment that neither a majority nor a substantial number of lots within Walnut Grove Estates maintain stables or keep horses. *See generally, Klein v. Township of Lower Macungie*, 39 Pa. Commonwealth Ct. 81, 395 A.2d 609 (1978) (board could properly conclude that private tennis courts are customarily incidental to residential homes absent a determination that a majority or even a substantial number of residential properties in the neighborhood had tennis courts).

We hold that a stable is an accessory building and the keeping of horses is a permitted accessory use in this community and order that a permit for such construction shall be granted to the appellees. In so doing, we note error on the part of the trial court in ordering the issuance of a special exception, as accessory uses are permitted as of right under the Ordinance. Therefore, we modify the order of the trial court to require that a permit for the construction of the stable be granted and affirm the order reversing the ZHB's decision in all other respects.

---

[6] The ZHB emphasizes that the neighborhood in *Palo Alto* was served by platted and dedicated streets. It therefore submits that because Walnut Grove Estates is also served by such streets, the two communities are similar in nature. We refuse to conclude that this single similarity renders the communities identical, when in truth, other factors indicate that they are dissimilar.

ORDER

AND NOW, this 1st day of December, 1988, the Order of the Court of Common Pleas of Centre County in the above-captioned matter is modified to require the issuance of a building permit for the construction of a stable and is affirmed in all other respects.