713 A.2d 607

**SOUTHCO, INC. and Contact II, Inc., Appellants,**

**v.**

**CONCORD TOWNSHIP, Concord Township Board of Supervisors and United Artist Realty Company, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1997.

Decided May 20, 1998.

Michael F.X. Gillin, Media, for Southco, Inc.

John J. Mezzanotte, Jr., Media, for Contact II, Inc.

John W. Wellman, Media, for Tp. of Concord and Concord Tp. Bd. of Supervisors.

Michael J. Lyons, Christopher Bailey, Chadds Ford, for United Artists Realty, Co.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

This Court granted *allocatur* in this matter in order to address two related issues. The first issue is whether a proposed use in a land development application to operate a "Turf Club" which would offer food and beverage service as well as wagering on simulcasted horse races constitutes a permitted restaurant use under the Concord Township Zoning Ordinance. If the proposed Turf Club constitutes a permitted restaurant use, the second issue is whether the wagering component of the proposed Turf Club constitutes a permitted accessory use by right under the Concord Township Zoning Ordinance. Because we find that the proposed Turf Club constitutes a permitted restaurant use and the wagering com-

ponent constitutes a permitted accessory use under the Concord Township Zoning Ordinance, we affirm the order of the Commonwealth Court.

The underlying history giving rise to the instant dispute is that on July 26, 1993, Route 1 Associates, in association with Greenwood Racing, Inc. and Brandywine Turf Club, Inc. (collectively, "Applicants"),[1] filed a land development application with Concord Township. Applicants sought to convert a twenty-thousand square foot motion picture facility on a 7.9 acre parcel of land located at the intersection of U.S. Route 1 and Brinton Lake Road in Concord Township, Delaware County into what they designated as a "Turf Club." The proposed Turf Club facility would devote 75% of its building space to a restaurant/bar and 25% of its building space to off-track wagering of simulcasted horse racing. The property subject to the application is zoned as a C–3 Commercial Services District ("C–3 District") by the Concord Township Zoning Ordinance ("Zoning Ordinance").

Under the Zoning Ordinance, certain uses are expressly designated as uses by right in a C–3 District, such as a restaurant use or an accessory use. The Zoning Ordinance neither expressly allows nor expressly prohibits off-track wagering facilities in a C–3 District. Applicants' land development application asserted that the proposed Turf Club is permitted in the C–3 District because it is a restaurant facility in which off-track wagering is offered as an accessory use.

On October 18, 1993, the Concord Township Planning Commission, after reviewing Applicants' preliminary plan for the Turf Club and conducting a public hearing, voted to recommend to the Concord Township Board of Supervisors (the "Board") that Applicants' preliminary plan be approved. On November 2, 1993, the Board held a public hearing on Applicants' preliminary plan. At the hearing, the Board received oral testimony and/or written reports from Concord Town-

1. At the time of the application, Route One Associates was the legal owner of the property. During the application process, Route One Associates assigned its development application rights to United Artists Realty Company.

ship's legal counsel, an engineer, an architect, a sewage enforcement officer, the sewer authority and the fire marshal. All of this testimony generally agreed that the preliminary plan met township zoning requirements. The Board also heard objections from appellants Southco, Inc.[2] and Contact II, Inc.[3] In particular, Southco and Contact II argued that the wagering component of the project was separate from the restaurant use and that Applicants needed to obtain a conditional use permit before wagering could be allowed.[4] After considering the evidence, the Board approved Applicants' preliminary plan based on its finding that the proposed restaurant was a permitted use and the off-track betting portion of the facility was an accessory use under the Zoning Ordinance.[5]

Southco and Contact II each appealed the Board's decision to the Delaware County Court of Common Pleas, asserting that the Board erred in ruling that the proposed Turf Club was a restaurant and that the off-track wagering component was an accessory use. Subsequent to the filing of these appeals, but prior to the Delaware County Court of Common Pleas' ruling, Applicants submitted a final land development plan for the proposed Turf Club. On April 5, 1994, the Board approved the final plan by a 3-to-1 vote. Southco and Contact II also filed a joint appeal to the Delaware County Court of Common Pleas upon the Board's approval of the final plan.

2.  Southco is a corporate entity whose property abuts the north and west boundaries of the property Applicants are seeking to develop.

3.  Contact II is an incorporated group of Concord Township Residents whose stated purpose is to protect the common interests of its members and the township as a whole.

4.  If Applicants needed to obtain a conditional use permit, Southco and Contact II argue that the Board would be able to consider the social impact of gambling, something which the Board cannot consider if the proposed use falls within a permitted use by right category of the Zoning Ordinance.

5.  The Board also placed two conditions on its approval of Applicants' preliminary plan. One condition was that the entire premises be leased at all times to Brandywine Turf Club, Inc. The other condition was that the off-track betting component was to remain unchanged during its existence and that no other form of wagering or betting was to be allowed at the facility other than wagering on simulcasted horse racing. Applicants agreed to these conditions and the conditions are not at issue in this appeal.

On March 24, 1995, the Delaware County Court of Common Pleas denied the appeals. The court found that the proposed Turf Club was a restaurant because the facility would channel a significant amount of time, energy, manpower and money into furtherance of the sale and consumption of food and beverages. The court also found that the off-track wagering portion of the proposed Turf Club was an accessory use to the restaurant because the wagering aspect was a form of entertainment activity similar to other forms of entertainment which are "customarily incidental" to that offered by other restaurants in Concord Township.

On May 24, 1996, the Commonwealth Court affirmed the Delaware County Court of Common Pleas' ruling. This Court granted *allocatur* in order to determine whether Applicants' proposed Turf Club constituted a permitted restaurant use by right under the Zoning Ordinance and, if so, whether the wagering component of Applicants' proposed Turf Club constituted a permissible accessory use by right under the Zoning Ordinance.

Whether a proposed use, as factually described in an application or in testimony, falls within a given category specified in a zoning ordinance is a question of law. *Merry v. Zoning Bd. of Adjustment*, 406 Pa. 393, 394, 178 A.2d 595, 597 (1962). Thus, appellate review is limited to determining whether the lower court committed an error of law. *Id.* In addition, zoning ordinances must be liberally construed and interpreted broadly so that a landowner may have the benefit of the broadest possible use of the land. 53 P.S. § 10603.1; *Upper Salford Township v. Collins*, 542 Pa. 608, 610, 669 A.2d 335, 336 (1995). Moreover, when interpreting zoning ordinances, words not defined in the ordinance are to be construed in accordance with their plain and ordinary meaning. *Id.* at 612, 669 A.2d at 337.

The first issue which must be addressed is whether Applicants' proposed Turf Club constitutes a permitted restaurant use by right under the Zoning Ordinance. Section 2302.A.3 of the Zoning Ordinance provides that a building in a C–3

District can be used by right as a restaurant. Section 104 of the Zoning Ordinance defines a restaurant as "a business devoted to the sale and consumption of food and beverages and consumed only inside the building while patrons are seated at counters or tables." The Zoning Ordinance contains no further definitional refinements of what constitutes a restaurant. Moreover, the Zoning Ordinance does not expressly limit a restaurant to a business which is exclusively dedicated to serving food and beverages. Instead, the Zoning Ordinance only requires that the business be "devoted" to the sale and consumption of food and beverages. The word "devote," as ordinarily defined in Webster's Second New World Dictionary 387 (1986), is as follows: "to give up (oneself or one's time, energy, etc.) to some purpose, activity or person." Since the plain meaning of the word "devote" generally does not connote exclusivity, Applicants' proposed Turf Club would qualify as a permitted restaurant use by right if it will devote a significant amount of time, money and energy towards the sale and consumption of food and beverages.

Here, the evidence demonstrated that Applicants' proposed Turf Club would utilize 75% of the building solely for the sale and consumption of food and beverage. Included within this 75% exclusive utilization were plans for a cafeteria-style food court with seating, a full-service eating establishment with a seating capacity for one hundred persons and a food preparation area with commercial-size cold storage equipment, ovens and stoves. Also, Applicants' plan showed that the proposed Turf Club was capable of providing food and beverage service facilities for private parties and banquets. Moreover, Applicants' plan called for a majority of the proposed employees to be utilized exclusively for the sale of food and beverages. Included within the proposed employees was a trained executive chef to oversee all the food preparation as well as thirty to forty other support personnel (such as waiters, cooks, hostesses and bartenders), whose only jobs would be in the food and beverage portion of the proposed Turf Club. Applicants' assertion that the majority of employees would be involved in the food and beverage aspect was supported by evidence

showing that the majority of employees at two other Turf Clubs operated by Greenwood Racing were exclusively involved in the sale and consumption of food and beverages. Based on these facts, it appears that Applicants' proposed Turf Club would devote a significant amount of space, manpower and money towards the sale and consumption of food and beverages.

■■■■ Despite the above, Southco and Contact II argue that Applicants' proposed Turf Club cannot constitute a permitted restaurant use because the majority of its revenue will be generated from the Turf Club's wagering component. However, for purposes of zoning, the manner in which an establishment derives its income is not determinative of the establishment's principal use. *Philm Corp. v. Washington Township*, 162 Pa. Commw. 126, 133, 638 A.2d 388, 391 (1994), *appeal denied*, 540 Pa. 635, 658 A.2d 798 (1995).[6] Moreover, as described at the hearings before the Board, Applicants expect that the restaurant will return a profit just like the two other Turf Clubs that they operate. Therefore, even though the wagering component will generate significant revenue, the totality of the evidence demonstrates that Applicants' proposed Turf Club will devote a large amount of building space, manpower and energy towards the restaurant component of the Turf Club. Accordingly, the Commonwealth Court correctly held that the Board did not err as a matter of law in concluding that Applicants' proposed Turf Club constituted a permitted restaurant use by right under the Zoning Ordinance.

Since the Board did not err as a matter of law in determining that the proposed Turf Club constituted a permitted restaurant use, we must now examine whether the Commonwealth Court erred in affirming the Board's conclusion that the wagering component of the proposed Turf Club constitut-

---

**6.** A telling example of this concept was expressed by the Delaware County Court of Common Pleas in the instant matter. A newspaper, which prints stories of events occurring in the world, derives a majority of its revenue from advertising rather than the sale of the newspaper itself. However, a newspaper does not lose its character as a newspaper because of the manner by which it derives its revenue.

ed a permitted accessory use by right pursuant to the Zoning Ordinance. Section 2302.A.15 of the Zoning Ordinance provides that a building in a C–3 District may have an accessory use by right. Section 104 of the Zoning Ordinance defines an accessory use as "a use conducted on the same lot as, and subordinate to, a principal use to which it is related (which use is clearly incidental to and customarily found) in connection with a particular principal use." Thus, in order to establish that the wagering component of the Turf Club constitutes an accessory use by right, Applicants must prove: (1) that the wagering component is secondary to the use of the property as a restaurant; and (2) that the wagering component is customarily incidental to properties used as restaurants. Moreover, as previously noted, the interpretation of whether the proposed Turf Club's wagering component constitutes an accessory use is a question of law and the Zoning Ordinance must be interpreted broadly in order to allow Applicants the broadest possible use of their land.

█ As for the "secondary" prong of the accessory use test, the evidence shows that 75% of Applicants' proposed Turf Club building will be dedicated to the restaurant operations while only 25% of the building will be used for the wagering component. Also, the majority of the employees will be dedicated to the restaurant portion of the proposed Turf Club rather than the wagering component. Moreover, the fact that the wagering component of a Turf Club is secondary to, or dependent upon a restaurant is supported by legislation found at the Race Horse Industry Reform Act (the "Act"), 4 P.S. § 325.101, *et seq.* The Act allows only simulcasting and wagering at facilities other than a racetrack where that facility will offer "high class restaurants." 4 P.S. § 325.218(g)(5)(ii). Also, the Act is designed not only to create jobs in the wagering industry, but also to create jobs such as "parking attendants, waiters and waitresses, security guards, custodial workers and food service personnel." *Id.* Further, the regulations promulgated pursuant to the Act will not allow approval of a Turf Club facility unless the facility contains a restaurant providing table service and menu items including appetizers,

entrees and desserts. 58 Pa.Code. § 171.25(c)(2). Thus, the Act itself demonstrates that the wagering aspect of the Turf Club is dependant on, and subordinate to, the restaurant, since the Act clearly does not envision or permit a facility allowing wagering to exist without a restaurant such as that proposed by Applicants.[7] Accordingly, the evidence produced by Applicants shows that the wagering component of the proposed Turf Club is secondary to the restaurant component.

As for the "customarily incidental" prong of the accessory use test, Applicants acknowledge that most restaurants do not have a wagering component. This scarcity is attributable to the strict regulations placed on such establishments by the Act. However, an accessory use may exist even where there is no evidence that a majority, or even a substantial number, of similar properties are engaged in a similar accessory use. *See e.g. Thomas v. Zoning Hearing Board,* 121 Pa. Commw. 393, 550 A.2d 1045 (1988) (horse stables were a permitted accessory use in low residential district even though other stables were not common); *Klein v. Township of Lower Macungie,* 39 Pa. Commw. 81, 395 A.2d 609 (1978) (tennis courts constituted a permitted accessory use even though a majority, or even a substantial number, of residences within the community did not contain tennis courts).

Here, the lower courts found that the wagering component of Applicants' proposed Turf Club constituted an entertainment activity akin to other forms of entertainment provided in restaurants in Concord Township. Such a conclusion is supported by *Valley Forge Plaza Associates v. Upper Merion Township Zoning Hearing Board,* 141 Pa. Commw. 686, 596 A.2d 1201 (1991). While *Valley Forge* was not an accessory use case, the Commonwealth Court did find that the addition of off-track betting to a hotel assembly hall did not change the

7. In relying on the Act, we are not holding that the Act supersedes the Zoning Ordinance by allowing the Applicants to avoid compliance with zoning requirements just because the business is statutorily regulated. Instead, the Act simply presents evidence to support Applicants' contention that the wagering component of the Turf Club is secondary to or dependant upon the restaurant component.

essential nature of the hotel, since the off-track betting was another source of entertainment of the same general character as that normally offered in the assembly hall for hotel patrons. Moreover, as noted above, state regulations envision the wagering component of a Turf Club like that proposed by Applicants as being customarily incidental to a restaurant since the regulations will not allow approval of such a facility without a restaurant. Thus, Applicants produced sufficient evidence to support the "customarily incidental" prong of the accessory use test. Therefore, since this Court is required to broadly interpret a permitted use by right in a Zoning Ordinance so as to allow a landowner the broadest possible use of the land, we conclude that the Commonwealth Court correctly held that the Board did not err in finding that the wagering component of Applicants' proposed Turf Club constituted a permissible accessory use by right to the restaurant component.

Accordingly, for the reasons stated above, we affirm the order of the Commonwealth Court.

CAPPY, J., concurs in the result.

NIGRO, J., files a dissenting opinion.

NIGRO, Justice, dissenting.

The majority's opinion departs from Pennsylvania authority requiring that an accessory use of property be subordinate to *and* customarily found with the property's principal use. The majority does not discuss existing precedent on accessory uses and cites no evidence of record supporting that off-track betting at the Turf Club is an accessory use to the property's use as a restaurant. A consideration of the relevant authority and the evidence dictate that the Commonwealth Court's decision should be reversed.

The applicable zoning ordinance defines accessory use as:

A use conducted on the same lot as, and subordinate to, a principal use to which it is related (which use is clearly

incidental to and customarily found) in connection with a particular principal use.

Concord Township Zoning Ordinance 104. Thus, Applicants had to show (1) that off-track betting is subordinate to the principal use of the property as a restaurant *and* (2) that off-track betting is customarily found with properties used for restaurants. Applicants established neither requirement.

With respect to the first requirement, courts have looked at the activity taking place on the property as well as its physical characteristics to determine whether a proposed accessory use is secondary to a primary use. In *Borough of Fleetwood v. Zoning Hearing Board*, 538 Pa. 536, 649 A.2d 651 (1994), for example, the Supreme Court considered whether the operator of a convenience store could install a gasoline pump as an accessory use of the property. The Court found that the zoning board did not abuse its discretion in concluding that the gas pump was subordinate to the convenience store. 538 Pa. at 545–46, 649 A.2d at 655. The Board had found that the number of people who bought items other than gasoline at comparable properties far exceeded the number of people who bought only gasoline. *Id.*

In *Gross v. Zoning Board*, 424 Pa. 603, 227 A.2d 824 (1967), the Supreme Court considered whether a proposed restaurant would be an accessory use to a bowling alley. In finding the restaurant subordinate to the use of the property for a bowling alley, the Court found evidence in the record that it would occupy only 3.5% of the premises and that the income generated would constitute only a small fraction of the gross business income. *Id.* at 605–06, 227 A.2d at 826.

Unlike in *Fleetwood* and *Gross*, there is no evidence here supporting that the use of the Turf Club for off-track betting is subordinate to its use as a restaurant. While there is evidence describing the restaurant, there is little information about the use of the property for off-track betting and how the two uses compare. The evidence that does exist suggests that people will go to the Turf Club primarily for off-track betting.

The Applicants state that 75% of the building will be used for a restaurant, bar and lounge area with television simulcasting, while bets are placed in an area occupying 25% of the building. When the Board of Supervisors' Chairman asked the Turf Club's operator to describe its hours of operation, he replied:

> The main racing takes place in the afternoon. And, depending upon the time [of] year, it is either a 12:30 or a 1 o'clock post time. We normally open at 11:00 or 11:30 so the people could come for an early lunch. We serve food in the restaurant from 11:30. The evening session normally starts at 7:00 in the evening and goes through to approximately 11 or 11:30.

N.T. 11/2/93 at 20. In addition, individuals under the age of twenty-one may not enter the premises without a parent. N.T. 11/2/93 at 16. While a comparable number of employees would do work related to food and beverage and wagering, people will spend more money on wagering.[1] In contrast to other cases finding accessory uses, the evidence does not establish that off-track betting is a secondary use of the property. To the contrary, off-track betting activities appear to be an integral part of the establishment.

The Commonwealth Court failed to address the requirement that off-track betting be subordinate to the property's use as a restaurant. Since there is no evidence that off-track betting is a subordinate use, the majority of this Court relies heavily upon legislation requiring that simulcasting and wagering be conducted at a facility with a restaurant. This requirement, however, equally supports that wagering is the primary activity at the Turf Club and that the Club complies with the law by also providing a restaurant. The legislation that the majority relies upon requires that off-track betting be associated with a restaurant "so that all or part of the . . . facility will resemble

---

1. The Turf Club's operator stated that at another Turf Club, 43 employees work in food and beverage, 40 work in admissions, security, cleaning, management and office staff, and 29 accept wagers and do the video displays. N.T. 11/2/93 at 21. He stated that people spend three times more on wagering than on food and beverage. *Id.*

the clubhouse facilities of a racetrack." 4 Pa. Stat. 325.218(g)(5)(ii).

The majority's treatment of the second requirement—that the accessory use is customarily found with a principal use—is more troublesome. The majority concludes that an accessory use exists notwithstanding its acknowledgement that off-track betting is *not* customarily found in other area restaurants. The majority has in effect eliminated the second zoning ordinance requirement.

As recognized by Judge Pellegrini in his dissent below, this Court and the Commonwealth Court have considered evidence about properties in the area to determine whether a proposed accessory use is customarily found with a principal use. In *Gross v. Zoning Board*, 424 Pa. 603, 227 A.2d 824 (1967), also discussed above, the owner of a bowling alley sought to operate a restaurant on the premises as an accessory use. The Supreme Court held that the proposed accessory use was customarily incidental to the property's primary use based upon evidence that a substantial percentage of bowling alleys in the area had restaurants. *Id.* at 606, 227 A.2d at 826.

Similarly, in *Thomas v. Zoning Hearing Board*, 121 Pa. Commw. 393, 397–98, 550 A.2d 1045, 1047–48 (1988), the Commonwealth Court held that a stable was an accessory use. The court found that stables were customarily found with houses in the rural area based upon evidence that area residents kept livestock in stables.[2] In *Champaine v. Zoning Hearing Board*, 30 Pa. Commw. 544, 547–48, 374 A.2d 752, 753–54 (1977), the Commonwealth Court held that selling horse equipment is not customarily incidental to running a

**2.** The majority misconstrues *Thomas* in finding that it supports that an accessory use is allowed where properties in the area do not have the proposed use. *Thomas* involved a house in a development in a rural area. The court stated that it did not matter that other houses *within the development* did not have stables. Rather, the relevant area included the surrounding community. Likewise, in *Klein v. Township of Lower Macungie*, 39 Pa. Commw. 81, 395 A.2d 609 (1978), the Commonwealth Court found that a tennis court was an accessory use where there was evidence that tennis courts are usually incidental to homes in the township, although not in the neighborhood where the property at issue was located.

horse farm because there was no evidence that a substantial percentage of area farms sold such equipment. Thus, selling horse equipment could not be justified as an accessory use. In light of this authority, the majority improperly concludes that an accessory use exists where off-track betting is not customarily found with restaurants.[3]

Finally, the fact that Pennsylvania legislation requires that off-track betting facilities be established in connection with restaurants does not support that they are usually found with restaurants for purposes of a municipality's zoning ordinance. Permissible accessory uses vary by location. For example, while horse stables may be customarily found with houses in rural communities, they may not be customarily found with houses in urban areas. Thus, whether a secondary use is customarily found with a principal use depends upon evidence about the area in question, not whether state legislation requires that one activity be conducted with another. In sum, Applicants have not established that off-track betting is subordinate to the property's use as a restaurant or that off-track betting is customarily found in restaurants. Thus, the Commonwealth Court's decision should be reversed.

**3.** The majority's reliance upon *Valley Forge Plaza Assoc. v. Zoning Hearing Board,* 141 Pa Commw. 686, 596 A.2d 1201 (1991), is misplaced. *Valley Forge* considered whether an off-track betting facility and an assembly hall were "of the same general character" under a zoning ordinance. It does not address accessory uses.