**MIKELS MOTORS, INC., Appellant,**

v.

**TOWNSHIP OF STROUD, County of Monroe, Commonwealth of PA.**

No. 01–4281.

United States Court of Appeals, Third Circuit.

Submitted Sept. 18, 2002.

Decided Oct. 2, 2002.

Before BECKER, Chief Judge, SCIRICA, and McKEE, Circuit Judges.

OPINION

BECKER, Chief Judge.

This is an appeal by plaintiff Mikels Motors, Inc. ("Mikels") from the order of the District Court entered on a jury verdict in favor of the defendant, the Township of Stroud ("Township"). Mikels brought the action under 42 U.S.C. § 1983 alleging that its substantive due process rights were violated when the Township denied the zoning application of Mikels and The Downs—Off Track Wagering, Inc. ("OTB"), which leased the land from Mikels conditioned upon approval of the zoning application, for an off-track betting establishment. Under the zoning ordinance, a property use determined to be a "place of assembly" was required to have more parking spaces than a use determined to be a "restaurant." The Township denied Mikels' zoning application because the plans for the OTB did not provide for adequate parking since the OTB was determined to be a "place of assembly" and not a "restaurant."

Mikels' primary contention on appeal is that the District Court erred: (1) when it refused to allow Mikels to introduce evidence that it gave notice to the Zoning Hearing Board of *Southco, Inc. v. Concord Township,* 552 Pa. 66, 713 A.2d 607, 611 (1998), a decision construing a turf club (where off-track betting took place) to be a "restaurant" entitled to a zoning permit under the zoning laws of Concord Township, which are similar to Stroud's; and (2) when it failed to instruct the jury about the decision.

In addition, Mikels contends that the District Court erred when it prevented Mikels from introducing state of mind evidence that tended to show that Stroud had improper motives for denying the zoning application; *i.e.* evidence that Stroud used "hired gun" lawyers and that there were "political pressures" on the Township officials to prevent the OTB from setting up shop in Stroud. Finally, Mikels argues that the District Court improperly disallowed rebuttal testimony about "chicanery" in the amendment to the zoning ordinance after Stroud denied the zoning application. Finding all these objections to be totally without merit, we affirm. The facts and procedural history are well known to the parties and need not be repeated here. Rather, we confine ourselves to a statement of our *ratio decidendi*.

### I.

Mikels submits that when the Township ignored *Southco*, which Mikels views as being "on all fours" with the facts at bar, it demonstrated that its actions were "not rationally related to a legitimate government interest" and that the Township was therefore motivated by "bias, bad faith or improper motive." *See Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253, 263 (3d Cir.1995) (citing *Parkway Garage v. Philadelphia*, 5 F.3d 685, 692 (3d Cir.1993) citing *Midnight Sessions, Ltd. v. Philadelphia*, 945 F.2d 667, 683 (3d Cir.1991)). However, even assuming that Mikels made an adequate proffer of evidence of the Zoning Hearing Board's notice of the *Southco* case,[1] the case is inapposite. In *Southco*, the Pennsylvania Supreme Court found that a "turf club" fell under the definition of "restaurant" in a C–3 Commercial Services District in Concord Township where the turf club

building space was composed of 75% restaurant and 25% off-track gambling. 713 A.2d at 611. The Court reasoned that the fact that the turf club derived most of its income from gambling was not determinative of the principal use of the property under the zoning law. *Id.* at 610.

This case is very different from *Southco* based on the determination by Donna Alker ("Alker"), an engineer for the Township, that the OTB was a "place of assembly" and not a "restaurant." Alker testified that the original zoning application for the OTB did not divide the uses between restaurant, gambling, *etc* ..., as the turf club did in *Southco*. In addition, the original zoning application stated that the OTB would have two theaters, a use which is specifically listed as a "place of assembly" under the zoning ordinance. Although the OTB changed the designation of "theater" on the zoning application, Alker concluded that much of the OTB would actually be used as a theater, with long benches and numerous televisions. Moreover, Alker visited other OTBs (OTB owns other sites that would be similar to the proposed OTB in Stroud) to determine whether the OTB would be a "restaurant" or a "place of assembly." She determined that the primary use of the OTB was as a "place of assembly" since there were television monitors everywhere and one large theater with long skinny tables and big screen televisions. Alker concluded that the OTB she visited was "indeed a place where people go to place bets ... and not go to use their restaurant." Nothing in the record here suggested anything approaching the 75% of the premises that was used as a restaurant in *Southco*.

The District Court was therefore correct to exclude as irrelevant the proposed evidence that the Township had notice of the

---

1. *Southco* is not even mentioned on the pages    in the appendix listed by Mikels in the brief.

*Southco* decision as proof that it acted irrationally and deprived Mikels of its substantive due process rights. For the same reason, the District Court did not err when it refused to give a jury instruction stating that *Southco* categorically held that "[o]ff track wagering is an accessory use," when *Southco* actually held that off track wagering was an accessory use where the turf club was primarily used as a restaurant.

## II.

The remaining arguments merit little if any discussion. The "hired gun" argument is frivolous. The rebuttal evidence argument fails, *inter alia*, because Mikels cannot prove that the Township had animus towards OTB when it denied the zoning application appeal; the proposed amendment had not been adopted when the Township denied Mikels' zoning application. It is unclear from the record that Mikels ever attempted to present evidence about the "political pressures" on the Township officials. Mikels states that "upon objection, the trial court refused Appellant the right to make this inquiry [about political pressure]." However, once again Mikels only provides a citation in the Statement of Case.[2] At all events, Mikels has made no proffer as to the nature of the supposed political pressure. There is always some political pressure involved in any local zoning case. Mikels has made no submission that any political pressure of the magnitude necessary to meet the very heavy burden of a substantive due process violation by the actions of the Township.

The order of the District Court will be affirmed.

---

**2.** During the cross examination of Marvin W. Walton, a zoning official in Stroud, Mikels asked, "Do you recall the sentiments, if you do, suggested by then representative Joseph Battisto?" The District Court sustained the Township's objection to this line of questioning. It is thus unclear that Mikels even attempted to inquire about political pressure.

From the record, it appears that Mikels was asking a zoning official about the "sentiments" of another individual. It is certainly not obvious from this interaction that the District Court was precluding Mikels from asking about "political pressure" being placed upon the Township to deny the zoning application to OTB.