**PHILADELPHIA SUBURBAN
DEVELOPMENT CORP.,
Appellant**

v.

**SCRANTON ZONING HEARING
BOARD.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 2011.

Decided April 5, 2012.

Richard S. Bishop, Kingston, for appellant.

Daniel L. Penetar, Jr., Scranton, for appellee Scranton Zoning Hearing Board.

BEFORE: PELLEGRINI, Judge,[1] and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Philadelphia Suburban Development Corporation (Developer) appeals an order of the Court of Common Pleas of Lackawanna County (trial court) denying its application for an accessory use. In doing so, the trial court affirmed the decision of the Scranton Zoning Hearing Board (Board) that the creation of housing for pre-release inmates and parolees was not a use customary and incidental to an office use. Instead, the Board found that Developer's proposed facility is not permitted under the City of Scranton Zoning Ordinance (Zoning Ordinance).[2] Discerning no error in the Board's decision, we affirm.

Developer owns an office building located at 430 Penn Avenue in Scranton, Pennsylvania, located in the Commercial Downtown District. The Zoning Ordinance permits offices in the CD District. The Pennsylvania Board of Probation and Parole leases office space on the first floor of Developer's building at 430 Penn Avenue.

The Pennsylvania Department of Corrections (Department) has a community corrections center in Scranton and wants to relocate to Developer's building, which offers larger quarters. A "community corrections center" is a "half-way house" for inmates on work release and parolees who live there while transitioning back into the community. Certified Record Item No. 3.[3] Developer wants to lease the basement of its building to the Department for office space and the second floor for a community corrections center.

Developer sought the necessary zoning approvals. Use of the basement as office space is expressly permitted by the Zoning Ordinance. Developer asserted that the second floor community corrections center was a permitted use because it was accessory to the principal use, i.e., the offices in the basement.

Section 202 of the Zoning Ordinance defines "accessory use," in relevant part, as follows:

> A use customarily incidental and subordinate to the principal use or building and located on the same lot with such principal use or building.

ZONING ORDINANCE, December 1993, art. II, § 202, p. 2–2 (emphasis added). Section

---

1. This case was assigned to the opinion writer before January 7, 2012, when Judge Pellegrini became President Judge.

2. FILE OF COUNCIL NO. 74, 1993, *as amended,* entitled CITY OF SCRANTON ZONING ORDINANCE OF 1993.

3. Developer offered a Department printout describing community corrections centers as *"half-way houses"* where "inmates participate in aftercare programming and continue to prepare for community reintegration." Certified Record Item No. 3 (emphasis added). The Department refers to community corrections centers as part of the State Correctional System and "a viable alternative in

incarceration." *Id.* On its website, the Department describes community corrections centers in relevant part as

> ... residential facilities located in various Pennsylvania communities. These facilities, *also known as half-way houses,* provide a transitional process by allowing residents monitored contact with jobs and educational opportunities. The facilities house inmates in prerelease status and inmates granted parole by the Pennsylvania Board of Probation and Parole.

*http://www.portal.state.pa.us/portal/server.pt?*
*open=512&objID=14823&mode=2*

306.B of the Zoning Ordinance lists accessory uses that are specifically permitted in the CD District, such as a "day care center accessory to a place of worship." ZONING ORDINANCE, December 1993, art. III, § 306.B, p. 3–13. Section 306.B does not specify that a living area is accessory to office space. Section 306.C of the Zoning Ordinance, entitled "Permitted Accessory Uses in All Districts," also enumerates accessory uses, such as fences and signs, which do not apply here.[4] Finally, Section 306.C(28) contains a catch-all provision that allows:

> Such other accessory use or structure that the applicant proves to the satisfaction of the Zoning Officer is *clearly customary and incidental* to a permitted by right, special exception or conditional principal use.

ZONING ORDINANCE, December 1993, art. III, § 306.C(28), p. 3–17 (emphasis added). Developer asserted that the community corrections center should be approved because it is "clearly customary and incidental" for the Department to have housing in the same building as its offices.

By letter dated August 5, 2010, the Zoning Enforcement Officer, who had approved the office use request, denied the community corrections center proposal as a use not authorized in the CD District. Developer appealed to the Board. It requested an interpretation of the Zoning Ordinance that the proposed second floor

residential facility was a permitted accessory use to the offices in the building. In the alternative, Developer requested a variance to operate a community corrections center. The Board held hearings on September 16, 2010, and October 13, 2010.

Developer's vice president, Mark Nicoletti, appeared and testified in support of the request to set up a community corrections center. Developer proposed a facility with 36 beds on the second floor, staff on site at all times and on-site counseling for the residents.[5] Developer submitted a copy of a community corrections center resident handbook, which explains, *inter alia,* that residents must sign in and out of the building. If a resident leaves without permission, fails to report to the authorized destination or fails to return to the community corrections center, he will be deemed "an escapee or absconder." Certified Record Item No. 5, Exhibit A, p. 16.

Neighboring business owners appeared and spoke in opposition to the community corrections center. Attorney Jack Nogi, who occupies a nearby law office, testified that Developer's building began as a factory but has been used as an office building for many years. It has never been used for a residential purpose. Nogi opined that putting a residential facility on the second floor was not a permissible accessory use because it bore no relationship to offices. The testimony of other objectors

---

**4.** Some examples in Section 306.C are fences, off-street parking and signs. Section 306.C(6), (14), and (21), pages 3–16—3–17. Section 306.D of the Zoning Ordinance lists permitted accessory uses to commercial or industrial principal uses, and these include coin operated food, beverage, toy and newspaper sales machines, and a cafeteria and day care center for employees. Section 306.-D(2), (3) and (5), page 3–17.

**5.** The Department's current community corrections center is located at 240 Adams Avenue in Scranton, which is located in a com-

mercial district. Developer explained to the Board that the Department wishes to move because the building at 240 Adams Avenue is too small and Developer's building offers more space. John Foley, co-owner of the building at 240 Adams Avenue, appeared at the hearing and testified that he and his co-owners were given a variance to operate a community corrections center at that location. Reproduced Record at 22a (R.R. ——); Notes of Testimony, September 16, 2010, at 60 (N.T. ——).

related to Developer's proposed variance and explained why it would be harmful to the community.[6]

On October 13, 2010, the Board voted 4–0 against granting the special exception and 4–0 against granting a variance. The Board issued a written decision concluding that the "housing of·individuals on parole [is] not accessory to the Department's office space use" because it is not subordinate and customarily incidental to an office use. Board Decision at 5. The Board denied the variance because Developer did not show any hardship and because the objectors' evidence showed that granting a variance would alter the essential character of the neighborhood.

■ Developer appealed the denial of the special exception but did not appeal the denial of a variance.[7] By one-page order dated April 8, 2011, the trial court affirmed the Board. The trial court concluded that the "record evidence indicates legitimate factual and legal grounds for the decision reached" by the Board that "a proposed residential facility is not a permitted accessory use to Department of Corrections offices." Trial Court Order. The present appeal followed.[8]

Developer raises two issues for our consideration. First, Developer argues that the Board committed an error of law in holding that the proposed residential use of the building was not accessory to the Department offices. Second, Developer argues that the Board failed to make critical findings of fact.

■ Whether a proposed use is an accessory use "is a question of law to be determined based on the underlying facts." *Mitchell v. Zoning Hearing Board of the Borough of Mount Penn,* 838 A.2d 819, 826 (Pa.Cmwlth.2003). An accessory use must be both subordinate and customarily incidental, *i.e.,* secondary to the permitted main use of a premises and usually found with the principal use. *Id.*[9] A use cannot

---

6. The neighboring business owners testified that they feared having a community corrections center would make the area unsafe. Dr. Kenneth Lilik, who has a pediatric neurology practice near Developer's building, testified that his employees cannot go to the parking lot alone on Tuesday nights because that is "sexual offenders' counseling night" at the Parole Office. R.R. 48a; N.T., October 13, 2010, at 33.

7. By agreement of the parties, the trial court issued an order allowing N.A.W.W. Partnership to intervene in support of the Board's decision. N.A.W.W. Partnership owns nearby property, and it supports the Board's position in this litigation.

8. Where the trial court receives no additional evidence, our standard of review is to determine whether the Board committed an abuse of discretion or an error of law. *Feldman v. Zoning Hearing Board,* 89 Pa.Cmwlth. 237, 492 A.2d 468, 469 (1985). The Board abuses its discretion when its findings of fact are not supported by substantial evidence. *Piper*

*Group, Inc. v. Bedminster Township Board of Supervisors,* 992 A.2d 224, 230 n. 6 (Pa. Cmwlth.2010). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

9. The issue of accessory use can be a difficult one. As a leading treatise explains:

Few cases involving definitions in a zoning ordinance are as fact-dependent as a determination of whether one use is accessory to another. The usual ordinance permits a use accessory to a permitted use if it is subordinate or secondary to the principal use and customarily incidental to it. In most instances, the first is a relatively straightforward, factual issue because the use clearly is secondary, although the issues become more difficult at the margins. The second generally involves the question of which particular secondary uses are appropriately associated with the particular principal use in the factual situation involved.

ROBERT S. RYAN, PENNSYLVANIA ZONING LAW AND PRACTICE, § 4.3 at 22 (2001).

be considered accessory when it will actually be the principal use of the building. *Appeal of Hasley,* 151 Pa.Super. 192, 30 A.2d 187, 189 (1943).

■ In its first issue, Developer argues that the proposed residential facility is accessory to the Department's offices, which will be used for administration and counseling. It contends that the community corrections center is a secondary use because it simply provides "parolees with a place to sleep." Developer's Brief at 15. Those parolees spend the vast majority of their day elsewhere, either in the offices or off-premises at their jobs. The Board rejoins that a residential use is not "subordinate" and "incidental" to an office but, rather, transforms the entire space into something entirely different, *i.e.,* a halfway house.

In support of its argument that its proposed community corrections center is an accessory use, Developer directs the Court to precedent. In *Ellis v. Zoning Hearing Board of North Cornwall Township,* 131 Pa.Cmwlth. 633, 571 A.2d 541 (1990), this Court held that retail beer sales were an accessory use to a permitted wholesale beer operation because retail beer sales are customarily incidental to wholesale distributorships. *Id.* at 543. In *Southco, Inc. v. Concord Township,* 552 Pa. 66, 713 A.2d 607 (1998), the applicants sought to open a "Turf Club" that was 75 percent a restaurant and 25 percent an off-track wagering location for horse racing. Our Supreme Court held that the restaurant was the principal use and the wagering component was a permissible accessory use because it was an entertainment activity that did not change the essential nature of the restaurant and because state regulations clearly envisioned that the two uses would go together. In fact, the legislation prohibited approval of a wagering facility without an accompanying restaurant. *Id.* at 75–76, 713 A.2d at 611–612.

*Ellis* and *Southco* are distinguishable because both dealt with regulated activities, not a generic office use. To determine what is "customary" and "incidental," Developer believes that one must look at the use proposed by a particular tenant of an office. The Zoning Ordinance appears to require a broader view, *i.e.,* whether dormitories, of any type, are uses customarily found along with offices. However, even under Developer's narrow view that one examines the activities of a particular office tenant, Developer did not meet its burden. Nothing in the record supports the notion that a community corrections center is a customary adjunct to Department offices.

This case is more like *Appeal of Hasley,* 30 A.2d 187, where a property owner was denied a permit to operate a nursing home in a residential district. The Superior Court held that a nursing home could not be considered an accessory use because it would be the principal use of the house. *Id.* at 189. Further, a nursing home is a business that was not permitted in a residential district by the terms of the zoning ordinance. *Id.*

Developer's assertion that the corrections center is secondary to the Department's offices is also not supported by the evidence. Its own brief states that the Department's "entire operation at the Building would be called a Community Corrections Center." Developer's Brief at 6. The office space will be used for counseling inmates and parolees and for administering the community corrections center. The offices are subsidiary to the community corrections center, which is another name for a half-way house.

A "treatment center" is "not permitted" in the CD District. ZONING ORDINANCE, December 1993, art. III, § 306.B, p. 3–12.

Section 202 of the Zoning Ordinance defines a "treatment center" as follows:

A use (other than a prison or a permitted accessory use in a "hospital") providing housing facilities for persons who need specialized housing, treatment and/or counseling for stays in most cases of less than 1 year and who need such facilities because of:

A. criminal rehabilitation, such as a *criminal half-way house/criminal transitional living facility* or a treatment/housing center for persons convicted of driving under the influence of alcohol,

B. chronic abuse of or addiction to alcohol and/or a controlled substance, or

C. a type of mental illness or other behavior that could cause a person to be a threat to the physical safety of others.

ZONING ORDINANCE, December 1993, art. II, § 202, pp. 2–28–2–29 (emphasis added). In short, the Zoning Ordinance does two things relevant here. First, it makes it clear that a "treatment center" is a primary, not secondary, use. Second, it makes a "criminal half-way house/criminal transitional living facility" a treatment center.

Developer argues that the Zoning Ordinance does not define "community corrections center." This is true but irrelevant. The definition of "treatment center" includes a "criminal half-way house." Developer's own evidence showed that a community corrections center would be used as a "half-way house [to] provide a transitional process" for inmates. Certified Record Item No. 3. Developer argues that because there are approximately 50 facilities in Pennsylvania virtually identical to that at issue here, this shows that Department offices and a residential facility commonly go together. Developer's argument misses the mark because those other facilities are subject to other zoning laws or may exist in places where there is no zoning. In any case, it does not answer the question of whether the residential facility or the office is primary.

Developer also argues that the Board erred by failing to apply the reasonable person standard to determine whether the housing area was customarily incidental to the Department's offices. This Court has held that the phrase " 'customarily incidental' is best understood as invoking an objective reasonable person standard." *Hess v. Warwick Township Zoning Hearing Board,* 977 A.2d 1216, 1224 (Pa.Cmwlth. 2009). Before undertaking this analysis, however, Developer had to establish that the community corrections center is not a primary use, and it did not. Accordingly, the "customarily incidental" inquiry is of no moment.

Next, Developer argues that the Board's findings of fact relate to the variance, not to the accessory use issue. It argues that the Board failed to undertake the careful factual inquiry needed to determine whether the proposed community corrections center is an accessory use. We disagree.

The Board found that the Department wants to operate a community corrections center in Developer's building. Board Decision at 1, 2; Findings of Fact 1, 5. The Zoning Ordinance makes a half-way house, *i.e.,* a community corrections center, a principal use. This was the only finding it needed to make to dispose of Developer's argument that its proposed use was an accessory use.

For these reasons, the order of the trial court, which affirmed the Board's decision, is affirmed.

## *ORDER*

AND NOW, this 5th day of April, 2012, the order of the Court of Common Pleas of Lackawanna County dated April 8, 2011, in the above-captioned matter is hereby AFFIRMED.