IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Walter and Dustine Mercy, and     :
William Tollinger, as Attorney-in-Fact  :
for Betty Tollinger,             :
             Appellants       :
                         :   No. 900 C.D. 2017
           v.          :
                         :   Submitted: April 10, 2018
Zoning Hearing Board of Cross     :
Roads Borough, and             :
Lauer Bros. Properties, LLC      :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                  FILED: June 19, 2018

        Walter and Dustine Mercy, and William Tollinger, as Attorney-in-Fact for Betty Tollinger (collectively, Appellants), appeal from the June 12, 2017 order of the Court of Common Pleas of York County (trial court) affirming the decision of the Zoning Hearing Board of Cross Roads Borough (Board), which granted the application of Lauer Bros. Properties, LLC (Applicant) for a special exception to expand a nonconforming use on its property located at 6642 Church Street, Felton, Pennsylvania (the Property).

## Facts and Procedural History

The Property consists of approximately 116,429 square feet, or 2.673 acres, and is located in a Residential-Agricultural (R-A) Zone. Applicant alleged that prior to April 13, 1995, the effective date of the Cross Roads Borough Zoning Ordinance (Ordinance), the Property was used for equipment storage. On July 26, 2016, Applicant sought a special exception to expand this nonconforming use to include storage of recreation vehicles (RVs). However, on August 29, 2016, Applicant filed an amended application with the Board seeking a special exception to expand the nonconforming use to only include storage of a limited number of RVs and short-term, temporary parking of RVs. In its application, Applicant noted that the proposed expansion area consisted of 10,000 square feet, well under the permitted maximum expansion of 35% for a nonconforming use. (Board's Findings of Fact Nos. 1-7.)

At a Board hearing on August 30, 2016, Applicant formally withdrew its original application and advised that it was proceeding solely with respect to its amended application. The Board noted that Applicant was seeking permission to store up to 10 RVs at any one time on the Property. In support of its application, Applicant presented the testimony of Mark Lauer, its owner. Lauer testified that the Property would not be used for the sale, rental, washing, or fueling of RVs, that he did not propose to construct any additional structures on the Property,[1] and that he intended to fix a broken concrete pad near the front of the Property and lay stone in the proposed parking area. Lauer confirmed that he intended to store no more than 10 RVs on the Property at any given point in time. Lauer further stated that he was agreeable to the imposition of some screening requirements as a condition of approval. (Board's Findings of Fact Nos. 8-12.)

---

[1] The property included a residential building, which was leased to an individual by the name of Charles Hobbs. (Board's Finding of Fact No. 13.)

Lauer explained that he did not own any of the RVs that he intended to store on the Property; rather, one of his other business entities, Keystone Alternatives, owned the RVs. Lauer noted that he had several display lots throughout Cross Roads Borough (Borough) and York County from which he rented the RVs to the public. Lauer stated that he had previously stored RVs on the Property and received a warning from the Borough's zoning officer, after which he conversed with the zoning officer regarding the issuance of a certificate for storage of the vehicles and provided photos and documentation establishing that the Property had been used for storage of farm equipment and one or two RVs prior to the enactment of the Ordinance. He believed that the zoning officer and the Borough's solicitor were satisfied that such use was pre-existing. (Reproduced Record (R.R.) at 89a-91a.)

Lauer testified that he does not generally wash RVs on the Property and only occasionally washes an RV for personal use. He denied using any chemicals during such washes, instead relying on a power washer to remove any bugs and/or dirt. He agreed to a reasonable limit of the number of RVs allowed on the Property and to a limitation on washing. Lauer noted that he had water testing performed on nearby wells and presented an exhibit concluding that the water passed all tests and was in compliance with Department of Environmental Protection (DEP) standards. He also submitted a letter from a local police department referencing no accidents involving RVs on the stretch of road near the Property. (R.R. at 93a-100a.)

On cross-examination, Lauer explained that most of his rental business is performed via phone or online and that the RVs are picked up at one of his display lots. He emphasized that he only wished to utilize the Property for the storage of RVs. He noted that his rental business, Keystone Alternatives, currently owns approximately 15 RVs, but that he is seeking storage for no more than 10 on the Property at any one time. With regard to the well water testing, Lauer stated that he decided, after the

3

contamination issue was raised at a planning commission meeting, to collect samples from the two wells closest to the Property, which were then sent to a private laboratory for analysis, with the exception of one part of the analysis that had to be performed by DEP. He also identified an area to the rear of the Property where the RVs would be stored, as well as a smaller area nearby to be used solely for temporary parking. He noted that any dumping and fueling of RVs would take place off-site and that he would be willing to add screening/vegetation to obscure the view if requested by the neighbors. He further testified that he had no plans to conduct sales of RVs at the site and that he did not plan on having potential rental customers view the RVs at the Property. Upon questioning by neighboring landowners, Lauer indicated that no RV maintenance will be performed at the Property, including changing oils or fluids. (R.R. at 102a-49a.)

Applicant also presented the testimony of its tenant, Charles Hobbs. Hobbs testified that his mother had previously owned the Property and that he grew up there. Hobbs stated that there had always been agricultural equipment stored on the Property, most of which belonged to friends and neighbors and not to his family. He indicated that RVs had been stored on the Property prior to 2005, but no more than two at any time. He noted that one of the RVs regularly stored at the Property was owned by his brother and leased to Lauer. He also noted that there has never been any signage, sales, or even an office at the Property. Additionally, he noted that he had only observed approximately two to three RV washings every three months over the last year and no more than two covered trailers on site at any one time. (R.R. at 41a-57a.)

On cross-examination, Hobbs explained that he purchased the Property from his mother's estate in 2012 and later sold it to Lauer. He reiterated that from the time he was a young child, there was farm equipment stored on the Property, most of which belonged to a neighbor who ran a farm, and that some equipment was still on

4

site when he purchased the Property in 2012. He acknowledged that his mother never rented out any farm equipment at the Property. Between 1995 and 2005, Hobbs testified that his brother and uncle might have each stored an RV on the Property. However, he could not testify that there was RV storage in continuous use since 1995, the year in which the Ordinance was enacted. Finally, he testified as to his belief that Lauer intended to store no more than 10 RVs on the Property. (R.R. at 58a-80a.)

Chris Mercy and Appellant William Tollinger, neighboring landowners, testified in opposition to Applicant's request for a special exception. Mercy stated that he owns property adjacent to and east of Applicant's property, which he purchased in 2000. From 2000 to 2015, Mercy described seeing farm equipment and one or two RVs being stored on the Property at times. He noted that some of the farm equipment belonged to his father and grandfather and was for personal use. He denied knowledge of any commercial storage business existing on the Property. He also testified that the storage use was not continuous in nature, as he did not see RVs on the Property every day. On cross-examination, Mercy acknowledged that he no longer lives on the neighboring property and moved to a new address sometime in 2014. However, Mercy testified that he still cuts the grass at his own property every week or two. (Notes of Testimony (N.T.), 9/28/16, at 14-45.)[2]

Tollinger testified that his mother has owned property adjacent to Applicant's property since 1961 and that he grew up there. He stated that he has been back to his mother's property on a weekly basis from 1995 to 2015. He denied that Applicant's property had been used as a commercial business for storage of either farm equipment or RVs during that time period. He noted that he and his father had used the Property to store farm equipment but neither had ever paid any money for that storage. He also testified as to his belief that allowing the storage of RVs on the

---

[2] This testimony was not included in the reproduced record.

Property will diminish the value of his mother's property. On cross-examination, Tollinger acknowledged that he and his father had stored farm equipment on the Property since the 1970s and that his father had done some maintenance work for the prior owners of the Property and provided them with a butchered hog each year, most likely in exchange for allowing him to store the farm equipment. Tollinger also admitted that he would occasionally see one or two RVs stored towards the front of the Property. (N.T., 9/28/16, at 47-77.)

Keith Hunnings, the Borough's zoning officer, also testified at this hearing. He stated that he reviewed Applicant's original application, was aware of the amended application seeking expansion of a nonconforming use, and personally viewed the Property on multiple occasions. On one of these occasions, he observed four RVs parked to the rear of the Property. He confirmed Lauer's testimony regarding previous conversations between the two and his belief that there was an existing, nonconforming storage use at the Property. After conferring with the Borough's solicitor, Hunnings indicated that he issued Lauer a certificate of nonconformity. He also noted that the storage use was permitted in an R-A Zone by special exception. (N.T., 9/28/16, at 101-06.)

At a third and final Board hearing on October 26, 2016, the Board voted unanimously to grant Applicant's application with several conditions, including limiting the storage to RVs and other similar units, limiting the storage area to 10,000 square feet, adding screening on three sides with a minimum height of 6 feet, limiting the number of RVs to 10 at any one time, prohibiting customers from picking up RVs at the Property, and prohibiting the washing of RVs on the Property. (N.T., 10/26/16, at 3-5.)

The Board subsequently issued a written decision dated November 10, 2016. The Board accepted the testimony of Lauer and Hobbs as credible. The Board

also accepted the testimony of Hunnings, the Borough's zoning officer, as credible. Based upon this credible testimony, the Board found that the Property was used for the storage of farm equipment and RVs prior to April 13, 1995, the effective date of the Ordinance. The Board also found that the storage was continuous and was never abandoned by any of the owners of the Property. Further, the Board found that the storage of farm equipment and RVs was sufficiently similar to justify Applicant's expansion of this prior use to permit the storage of RVs as requested.[3] (Board's op. at 1-3.)

The Board noted that, with the attached conditions, Applicant has met the general and specific standards for a special exception under sections 504(f) and 624 of the Ordinance. More specifically, regarding section 504(f), the Board found that: the proposed use was in harmony with the orderly and appropriate development of the R-A Zone; adequate water supply, sewage disposal, storm drainage, and fire and police protection are or can be provided; the use will not discourage development of adjacent land and buildings nor impair their value; and the use will not create congestion or cause commercial or industrial traffic on residential streets. (Board's op. at 5.)

Regarding section 624, the Board found that: the proposed use was confined to a lot on which it was located on April 13, 1995, the effective date of the Ordinance; the total of all expansion will not exceed 35% of the lot area of the Property; there was no issue regarding access to streets, off-street parking, or off-street loading; the appearance will be harmonious with surrounding properties and include landscaping and screening requirements; and expansion shall not create new, or further increase existing, nonconformities. (Board's op. at 6.)

---

[3] In later discussion regarding the sufficient similarity between the prior use and the proposed use, the Board explained that "both involve storage of accessory-type vehicles." (Board op. at 9.)

7

Appellants subsequently filed a land use appeal with the trial court. The trial court did not take any additional evidence. By opinion and order dated June 12, 2017, the trial court affirmed the Board's decision and dismissed Appellants' appeal. The trial court emphasized that the Board rejected Appellants' testimony regarding the lack of any storage use, or at least a continuous storage use at the Property, as not credible. The trial court noted that the Board accepted the testimony on behalf of Applicant relating to the storage of farm equipment and RVs at the Property prior to the effective date of the Ordinance to be credible and dispositive. The trial court also noted that the Borough's zoning officer credibly testified as to his belief that storage was a pre-existing use at the Property.

**Discussion**

On appeal to this Court,[4] Appellants argue that the Board erred as a matter of law and abused its discretion in granting Applicant's request for a special exception. More specifically, Appellants argue that the Board erred and/or abused its discretion in: concluding that there was a pre-existing and continuous, nonconforming use at the Property; concluding that the prior, non-commercial storage of farm equipment was sufficiently similar to the commercial storage of RVs; failing to make a finding or determination that such an expansion was required out of business necessity; and concluding that Applicant met its burden of establishing all general standards required to obtain a special exception under sections 504(f) and 624 of the Ordinance.

---

[4] Where, as here, the trial court does not take additional evidence, our scope of review is limited to determining whether the Board committed an error of law or "a manifest abuse of discretion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Id.* at 640. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

8

**Pre-Existing, Nonconforming Use**

Appellants first argue that the Board erred as a matter of law and abused its discretion in concluding that there was a pre-existing and continuous, nonconforming use at the Property. We disagree.

Initially we note that "[a] special exception is not an exception to a zoning restriction, but a use that is expressly permitted." *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh*, 831 A.2d 764, 769 (Pa. Cmwlth. 2003), *aff'd*, 907 A.2d 494 (Pa. 2006). Recently, this Court reiterated that a "requestor has the burden of persuading the ZHB that the proposed use satisfies the objective requirements of the ordinance." *Dunbar v. Zoning Hearing Board*, 144 A.3d 219, 224 (Pa. Cmwlth. 2016) (citing *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 910 (Pa. Cmwlth. 1980)). Once a requestor proves compliance with an ordinance, the burden shifts to the objector to prove that the special exception use would have an adverse effect on the general public that is not normally associated with the proposed use. *Id.*

As a threshold matter in cases involving expansion of a nonconforming use, an applicant must establish that a nonconforming use existed at the property where expansion is sought and that such use existed at the time of enactment of the zoning ordinance. *Heyman v. Zoning Hearing Board of Abington Township*, 601 A.2d 414, 416 (Pa. Cmwlth. 1991) (stating that a prior nonconforming use is established where "objective evidence [shows] that the land was devoted to such use at the time the ordinance was enacted."). Further, "[t]he burden of proving the extent or existence of a nonconforming use rests on the property owner who would claim the benefit of the rights accorded property with that status." *Id.*

Section 203 of the Ordinance defines "NONCONFORMITY" as:

> A use, structure, lot, or dimension in conflict with the regulations of this Ordinance, (1) existing on the effective date of this Ordinance, or (2) existing at any subsequent

9

amendment of this Ordinance, or (3) created by variance. Specifically, the following types of nonconformities are distinguished:

. . .

NONCONFORMING USE - A use, whether of land or of a structure, which does not comply with the applicable use provisions in this Ordinance or any amendment heretofore or hereafter enacted, where such use was lawfully in existence prior to the enactment of this Ordinance or amendment, or prior to the application of this Ordinance or amendment to its location by reason of annexation.

(R.R. at 8a.) Section 419 of the Ordinance further provides that "the lawful use of land or buildings existing at the date of the adoption of this Ordinance may be continued, although such use of land or building does not conform to the use regulations specified by this Ordinance for the zone in which such land or building is located." (R.R. at 22a.)

In this case, there is no dispute that the Property had been used for storage prior to the enactment of the Ordinance. Indeed, Appellants concede in their brief that testimony before the Board established that "there was some storage of farm equipment predating the enactment of the . . . Ordinance." (Appellants' Brief at 12.) This testimony included Applicant's tenant, Hobbs, whose parents previously owned the Property and raised him there, and who confirmed that farm equipment belonging to friends and neighbors had been stored on the Property from the time he was a young child in the "early 80s." (R.R. at 61a.) Hobbs also stated that RVs had been stored at the Property prior to 2005, but no more than two at any time. (R.R. at 45a.) The Board accepted Hobbs testimony as credible. Even Appellant William Tollinger, one of the neighboring landowners who objected to Applicant's proposed expansion, acknowledged that he and his father had stored farm equipment on the Property since the 1970s. (N.T., 9/28/16, at 69.) Another neighboring landowner, Chris Mercy, testified that from 2000 to 2015, he saw farm equipment and one or two RVs being

10

stored on the Property. (N.T., 9/28/16, at 15, 31.) Further, the Board accepted the testimony of Hunnings, the Borough's zoning officer, that there was an existing, nonconforming storage use at the Property and that he, after discussion with and review by the Borough's solicitor, issued Lauer a certificate of nonconformity. (N.T., 9/28/16, at 103-04.)

While Appellants argue that such storage was a permitted use by right in an R-A Zone, Appellants' argument is misplaced. As Appellants note, section 303(b) of the Ordinance includes "Agriculture, Except Livestock, e.g., Crops, Gardening, Orchards, etc." as a permitted use by right. (R.R. at 11a.) However, even though such a use necessitates farming equipment, the fact remains that the Ordinance does not specify the storage of farm equipment as a permitted use. Thus, the Board did not err as a matter of law or abuse its discretion in concluding that there was a pre-existing and continuous, nonconforming storage use at the Property.

**Sufficiently Similar Use**

Next, Appellants argue that the Board erred as a matter of law and abused its discretion in concluding that the prior, non-commercial storage of farm equipment was sufficiently similar to the commercial storage of RVs. Again, we disagree.

In determining whether a proposed use continues a nonconforming use or constitutes a change in use, a zoning hearing board must consider whether the proposed use is "sufficiently similar" to the prior non-conforming use. *200 W. Montgomery Ave. Ardmore, LLC v. Zoning Hearing Board*, 985 A.2d 996, 999 (Pa. Cmwlth. 2009). As this Court previously explained, "a proposed use need not be identical to the preexisting use. As long as the proposed use is sufficiently similar to the use that existed at the time of the enactment of the zoning ordinance, the proposed use may not be characterized as a new or different use." *Foreman v. Union Township Zoning Hearing*

11

*Board*, 787 A.2d 1099, 1103 (Pa. Cmwlth. 2001). In the present case, Appellants argue that the commercial storage of RVs is not sufficiently similar to the non-commercial storage of farm equipment. However, Appellants' focus on the commercial/non-commercial distinction ignores the underlying similarity between the uses, *i.e.*, that both uses involve equipment storage on the Property, including RVs. Indeed, the Board found these uses sufficiently similar "in that both involve storage of accessory-type vehicles," Board op. at 9, and, as noted above, the uses need not be identical. Moreover, we note that the RVs, similar to the farm equipment stored on the Property in the past, were intended for off-site use. As noted above, the farm equipment stored on the Property belonged to friends and neighbors of the prior owners of the Property and the RVs belonged to another business owned by Lauer that rented the RVs to third parties.

## Business Necessity

Next, Appellants argue that the Board erred as a matter of law and abused its discretion in failing to make a finding or determination that expansion of the alleged nonconforming use was required out of business necessity.

We have previously held that whether a use proposed as an extension or expansion of an existing nonconforming use is the same as the existing use, or is a use accessory to the existing use, the proposed use must be shown to be "**needed** to provide for . . . natural expansion and the accommodation of increased trade." *Harrisburg Gardens, Inc. v. Susquehanna Township Zoning Hearing Board*, 981 A.2d 405, 411 (Pa. Cmwlth. 2009) (emphasis added) (citing *IMS America, Ltd. v. Zoning Hearing Board of Borough of Ambler*, 503 A.2d 1061, 1064 (Pa. Cmwlth. 1986)).

While the Board in the present case never made a specific determination that the proposed use was needed for "natural expansion and the accommodation of

12

increased trade," *Harrisburg Gardens, Inc.*, the record, including the Board's decision, is replete with references reflective of the connection between Applicant's desire to expand the storage use at the Property and its intent to grow its business. For example, the Board's findings of fact state that Applicant wishes to store RVs from a related RV rental business on the Property; that such storage is not permitted by right in the R-A Zone and that Applicant seeks to expand an existing storage use on the Property as it relates to a related business; and that Applicant would limit the storage to 10 RVs at any one time. (Board's Findings of Fact Nos. 3-5, 9.) Additionally, in his testimony before the Board, Applicant's owner, Lauer, testified that there would be no sale, rental, fueling, washing, or maintenance of RVs at the Property; that he maintained several display lots throughout the Borough; confirmed that no more than 10 RVs would be stored on the Property at any one time; and confirmed that customers would not view the RVs at the Property. (R.R. at 89a-100a.) Lauer emphasized that he simply needed to store RVs on the Property, as his RV rental business currently owned 15 RVs. (R.R. at 105a-07a.)

Thus, to the extent that the Board may have erred in failing to make a finding or determination that expansion of the alleged nonconforming use was required out of business necessity, such error was harmless and does not mandate a reversal of the trial court's affirmance in this case.

**Special Exception Standards Under the Ordinance**

Finally, Appellants argue that the Board erred as a matter of law and abused its discretion in concluding that Applicant met its burden of establishing all general and specific standards required to obtain a special exception under sections 504(f) and 624 of the Ordinance.

13

We have previously held that a zoning hearing board must grant or deny requests for special exceptions pursuant to the express standards and criteria set forth in the applicable zoning ordinance. *Edgmont Township v. Springton Lake Montessori School*, 622 A.2d 418 (Pa. Cmwlth. 1993). We further explained in *Edgmont Township* that an applicant seeking a special exception "is required to show at the time of the hearing that it met the requirements of the ordinance." *Id.* at 420. In other words, the applicant must "come forward with evidence detailing how it was going to be in compliance with the requirements necessary to obtain a special exception." *Id.* at 419.

**Section 504(f) of the Ordinance**

Section 504(f) sets forth the general standards for a special exception, providing as follows:

> A special exception may be granted when the Zoning Hearing Board finds from a preponderance of the evidence produced at the hearing that:
>
> 1. The proposed use, including its nature, intensity and location, is in harmony with the orderly and appropriate development of the zone;[5] and

---

[5] Section 303(a) of the Ordinance describes the purpose of the R-A Zone as follows:

> The purpose of the Residential-Agricultural Zone is to encourage orderly development and the preservation of existing residential and agricultural uses and complementary local commercial services while providing public facilities necessary for the health, welfare, and general convenience of the population; to preserve open space; to exclude any activities not compatible with the Residential-Agricultural environment; to avoid undue congestion on the roads; and to otherwise create conditions conducive to carrying out the purposes of this Ordinance.

(R.R. at 11a.)

14

2. That adequate water supply, sewage disposal, storm drainage and fire and police protection are or can be provided for the use; and

3. That the use of adjacent land and buildings will not be discouraged and the value of adjacent land and buildings will not be impaired by the location, nature and height of buildings, walls and fences; and

4. That the use will have proper location with respect to existing or future streets giving access to it, and will not create traffic congestion or cause industrial or commercial traffic to use residential streets; and

5. That the specific standards set forth for each particular use for which a special exception may be granted have been met.

The applicant for a special exception shall have the burden of proof, which shall include the burden of going forward with the evidence and the burden of persuasion on all questions of fact which are to be determined by the Zoning Hearing Board.

(R.R. at 26a.)

In this case, the Board made a specific finding regarding each element of section 504(f) of the Ordinance based upon the credible testimony of Lauer, Hobbs, and Hunnings as well as other evidence submitted by Applicant, including drinking water reports and numerous aerial and land-based photographs. Specifically, the Board found as follows:

a. The proposed use, including its nature, intensity, location, is in harmony with orderly and appropriate development of zone. Given the conditions that have been imposed by the Board, there will be no impact on this standard.

15

b.  Adequate water supply, sewage disposal, storm drainage, fire and police protection are or can be provided for the use.  There will be no sales or customers coming to, or washing of units on, the property, so there will be no impact on water or sewage.  Fire and police protection are not at issue.  Applicant will have to meet any Borough or state requirements for storm drainage.

c.  The use of adjacent land and buildings will not be discouraged nor their value impaired by the location, nature, and height of buildings, walls, and fences.  No new buildings, walls, or fences are proposed, so this requirement is not relevant to this application.  However, the Board has imposed a screening requirement of vegetative matter.

d.  The use will have a proper location with respect to existing or future streets, and will not create congestion or cause commercial or industrial traffic to use residential streets.  The property and driveway front on Church Street, which is the main east-west street through the Borough, and with the limit of no more than ten (10) units on the property at any time, the impact on traffic will be minimal.

e.  The specific standards in Section 624 of the Ordinance are addressed below.

(Board's Finding of Fact No. 31.)  Based upon this finding, we cannot conclude that the Board erred or abused its discretion in holding that Applicant met its burden under section 504(f) of the Ordinance.

**Section 624 of the Ordinance**

Section 624 sets forth specific standards regarding expansion of a nonconformity, providing as follows:

In any zone and subject to the requirements of the zone in which located except as herein modified and provided:

a) Expansion of the nonconformity shall be confined to the lot on which it is located on the effective date of this Ordinance or any amendment thereto creating the nonconformity.

b) The total of all such expansions of use shall not exceed an additional thirty-five percent (35%) of the area of those buildings or structures devoted to the nonconforming use as they existed on the date on which such buildings or structures first became nonconformities.

c) Provision for access drives, off-street parking and off-street loading shall be consistent with standards required by this Ordinance.

d) Provision for yards, building height and building area shall be consistent with the standards required for permitted uses in the zone in which the nonconformity in question is located.

e) Appearance should be harmonious with surrounding properties. This feature includes but is not limited to: landscaping, enclosure of principal and accessory uses, height control, sign control, and maintenance in good condition of all improvements and open spaces.

f) Buffers and screens shall be provided as necessary to adequately protect neighboring properties. This includes but is not limited to fences, walls, plantings and open spaces.

g) The expansion shall not create new dimensional nonconformities or further increase existing dimensional nonconformities.

(R.R. at 27a.)

Again, the Board made a specific finding regarding each element of section 624 of the Ordinance based upon the credible testimony and evidence before it. Specifically, the Board found as follows:

17

a. The proposed use is confined to lot on which it was located at the effective date of Ordinance, April 13, 1995.

b. The total of all expansions shall not exceed an additional 35% of the area of buildings or structures devoted to the use at the date they became nonconformities. "Structure" is defined in the Ordinance as any man-made object having a stationary location on land, *but excluding* driveways, walkways, and *parking areas*. (Emphasis supplied.) As this application is strictly about parking and storage, this standard does not apply to this application.

c. Access drives, off-street parking, and off-street loading shall comply with [the] Ordinance. There was no testimony or evidence that this is an issue. Applicant has adequate access to Church Street, and Applicant did not seek any accommodation from the Board for this condition. To the extent this needs to be addressed, it will have to be addressed between Applicant and the Borough.

d. Yards, building height, and building area shall be consistent with standards for the zone in the Ordinance. Applicant seeks to use 10,000 square feet of its 116,429.6 square foot property, which is 8.6% of the property, and no new buildings are proposed. There was no testimony or evidence that the total of all buildings, including the proposed use, exceed the 35% of the lot area permitted in the R-A Zone. The Board notes that 35% of the area of this property would be over 40,000 square feet, and there is no indication that the buildings and other coverage come near that amount. Thus, this standard is met.

e. The appearance should be harmonious with surrounding properties, including: landscaping; enclosure of principal and accessory uses; height, sign control; maintenance of improvements and open spaces. The only ones of these standards at issue are landscaping and open spaces. With the screening condition placed by the Board on the approval, those issues are resolved.

f. Buffers and screens, including fences, walls, plantings, open spaces, shall be provided as necessary to adequately protect neighboring properties. Again, the screening

18

condition placed by the Board on the approval resolves this issue.

g. Expansion shall not create new, or further increase existing, nonconformities. No new nonconformities are created by the proposed use, which is similar in nature to the prior use, and does not create new nonconformities. The nonconformity is one of use, not dimension.

(Board's Finding of Fact No. 32.) Based upon this finding, we cannot conclude that the Board erred or abused its discretion in holding that Applicant met its burden under section 624 of the Ordinance.

Accordingly, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Simpson concurs in result only.

19

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Walter and Dustine Mercy, and :
William Tollinger, as Attorney-in-Fact :
for Betty Tollinger, :
                Appellants :
                 : No. 900 C.D. 2017
          v. :
                 :
Zoning Hearing Board of Cross :
Roads Borough, and :
Lauer Bros. Properties, LLC :

## *ORDER*

AND NOW, this 19th day of June, 2018, the order of the Court of Common Pleas of York County, dated June 12, 2017, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge